Argued March 6, affirmed May 17, 1973

SAVELICH LOGGING COMPANY, *Appellant, v.*
PRESTON MILL COMPANY ET AL, *Respondents,*
*Cross-Appellants.*
509 P2d 1179

*David A. Vinson* of Sahlstrom, Starr & Vinson, Eugene, argued the cause and filed briefs for appellant.

*Richard W. Butler* of Thwing, Atherly & Butler, Eugene, argued the cause and filed a brief for respondents, cross-appellants.

McALLISTER, J.

This action for indemnity was tried by the court, which found for defendants. Plaintiff appeals. We are bound by the findings of the trial court if they are supported by any competent evidence.[1]

Although the court made only general findings, there was evidence from which it could have found the following facts, many of which were stipulated. In July 1969 plaintiff contracted to purchase all the merchantable timber on a tract of land in Douglas County owned by defendants. Defendants erred in pointing out the boundaries of their property to plaintiff. Plaintiff relied on the erroneous boundaries pointed out by defendants and as a consequence cut timber on adjoining land owned by the State of Oregon and so incurred liability for damages for timber trespass. See ORS 105.810, 105.815.

On January 30, 1970, plaintiff and the State Forester, acting for the state, executed an agreement reciting that plaintiff had cut about 327,000 board feet of merchantable timber on state land of the agreed value of $14,464 and plaintiff agreed to pay the state

---

[1] Atlantic Union Conf. v. Western Savings, 257 Or 266, 476 P2d 924 (1970); Trans. Equip. Rentals v. Ore. Auto. Ins., 257 Or 288, 478 P2d 620 (1970); State ex rel Salem Pac. v. Combo Constr., 254 Or 89, 91, 458 P2d 410 (1969).

double that amount, or $28,928, with payment in full to be made prior to September 1, 1970. The agreement provided that plaintiff could remove and sell the severed timber after first paying $7,232 and a like sum upon removal of each 80,000 board feet until the total amount of $28,928 was paid.[9] Plaintiff could not find a buyer for the logs and never paid either the initial payment of $7,232 or any part whatever of the $28,928.

Plaintiff's theory of recovery is that defendants were primarily liable to the state for the trespass,

---

[9] THIS AGREEMENT, made this 30th day of January, 1970, by and between Mr. Theron Savelich, doing business as Savelich Logging Company, hereinafter called 'SAVELICH,' and the State Forester, acting by and through the State of Oregon—Board of Forestry, hereinafter called 'STATE,' is for the purpose of settlement for timber severed on state-owned lands by Savelich Logging Company, under the following terms and conditions:

"1. SAVELICH confirms and agrees that during July and August of 1969 SAVELICH severed without authorization an estimated 327 thousand board feet of merchantable timber on state-owned lands located in the Southwest quarter of the Northeast quarter (SW1/4NE1/4) and the North half of the Southeast quarter (N1/2SE1/4) of Section 23, Township 22 South, Range 10 West, W. M., Douglas County, Oregon. SAVELICH further confirms that a portion of the timber in the amount of approximately 57 thousand board feet has been removed from State lands but is not yet sold by SAVELICH. SAVELICH agrees that no additional State timber shall be severed.

"2. SAVELICH agrees that the total stumpage value of the timber severed is $14,464 and hereby agrees to pay to STATE double damages in the total amount of $28,928.

"3. STATE hereby authorizes SAVELICH to remove and to sell such severed timber, provided the amount of $28,928 is paid to STATE in the following manner: $7,232 prior to further removal or sale of any timber from State land, or prior to July 1, 1970, whichever is first; $7,232 upon removal of each additional 80 thousand board feet until the total amount of $28,928 is paid. In any event such full payment shall be paid prior to September 1, 1970.

* * * * *"

and that plaintiff, although also liable, acted reasonably in relying on defendants' representations as to the boundary lines and was not *in pari delicto*. See *Gordon Creek Tree Farms v. Layne et al*, 230 Or 204, 221-229, 358 P2d 1062, 368 P2d 737 (1962) and *Kennedy v. Colt*, 216 Or 647, 339 P2d 450 (1959). While defendants do not concede their liability to the state, we may assume for purposes of this opinion that plaintiff's evidence was sufficient to establish that element of the case.

We have stated the elements of an action for common-law indemnity as follows:

> "In an action for indemnity, the claimant must plead and prove that (1) he has discharged a legal obligation owed to a third party; (2) the defendant was also liable to the third party; and (3) as between the claimant and the defendant, the obligation ought to be discharged by the latter. * * *" *Fulton Ins. v. White Motor Corp.*, 261 Or 206, 210, 493 P2d 138 (1972).

The controlling question in this case is whether plaintiff has "discharged" the obligation to the state so as to extinguish both its own and defendants' liability, if any, for the trespass.

The State Forester testified that in October, 1970, he advised plaintiff's attorney that the agreement between the state and plaintiff "had expired" and that the state intended to remove and sell the severed timber. Defendants argue that the conversation resulted in the abandonment of the entire agreement by the parties. Plaintiff argues that the parties merely modified the agreement relating to the removal and sale of the timber and that the agreement remained in force as to the amount of damages to be paid by plain-

tiff. The contentions of both parties find support in statements made by the State Forester in his extended testimony, but we find it unnecessary to resolve this issue. The state did, in fact, proceed to sell the severed timber and realized therefrom $18,337, which it credited on its claim against plaintiff, leaving a balance of $10,591 still unpaid.

Plaintiff concedes that normally payment of a third-party claim is necessary to give rise to the right to indemnity, but argues that the claim may be otherwise discharged, as by the giving of a note in full settlement, or by the giving of a mortgage on real property.[9] Plaintiff further argues that the execution of the "agreement" with the state fixed its liability and was the equivalent of payment. Defendants argue that, even if the agreement remained in force after October 1970, when the state moved in and marketed the severed timber, it did not amount to a discharge of the state's trespass claim.

■■ In the recent case of *Washington v. Heid,* 264 Or 179, 504 P2d 745 (1972) we considered the difference between an accord and satisfaction, in which a new liability is accepted in full payment of a prior claim, and an executory accord. In the case of an accord and satisfaction, or substituted

---

[9] In Twombley v. Wulf, 258 Or 188, 482 P2d 166 (1971) it was contended that plaintiff, who had given a note in payment of a debt which defendant had agreed to assume, had not been damaged because she had not paid anything. The court applied the rule that payment by a surety may be made in the form of a negotiable instrument if accepted by the creditor as payment, and expressly found that the evidence supported a finding that the note had been so accepted by the creditor.

In Cauffiel v. Glenn, 345 Pa 181, 27 A2d 30 (1942) and Borowsky v. Margulis, 310 Pa 420, 165 A 491 (1933), cited by plaintiff, the decisions likewise turned on whether the creditor accepted the mortgage as payment of the prior debt.

contract, the original obligation is totally extinguished and the creditor's only rights and remedies are those available under the new agreement. *Ohlson v. Steinhauser,* 218 Or 532, 538-539, 315 P2d 136, 346 P2d 87 (1959); Restatement 789, Contracts § 418. In the case of an executory accord, however, the prior claim is not extinguished until the new agreement is performed. The right to enforce the original claim is merely suspended, and is revived by the debtor's breach of the new agreement. *Ladd v. General Insurance Co.,* 236 Or 260, 267, 387 P2d 572 (1963); Restatement 785, Contracts § 417.

■ As we pointed out in *Washington v. Heid,* whether a particular settlement or compromise agreement is an accord and satisfaction, or merely an executory accord, is a question of intent, and the burden of proof is on the party claiming that an accord and satisfaction was intended. 264 Or at 183, 504 P2d at 747-748. In that case it was assumed, for purposes of decision, that the question was one for the jury. In the present case, as in *Washington v. Heid,* we need not decide whether the question was for the trier of fact or for the court as a matter of interpretation. In either event, plaintiff's position cannot be sustained.

The trial court's decision must have been based on one of two findings relating to the settlement agreement. It may have found as a fact that the agreement was abandoned by plaintiff and the state upon the occasion of the October conversation. There is evidence to support such a finding. Alternatively, the court may have concluded that the agreement was modified, as plaintiff contends, but that it was not intended that the state accept the agreement in full satisfaction of the timber trespass claim. Again, there is evidence to support such a finding, if it be properly one of fact.

If the question is properly one of interpretation for the court, then we would reach the same conclusion.

The written agreement is, at best, ambiguous on this point. The document recites that the agreement is "for the purpose of settlement for timber severed on state-owned lands by Savelich Logging Company". There is no express provision as to when the timber trespass claim is to be released. It has been said that there is a presumption that the parties intended that only performance would operate as a final discharge, *Owens v. Hunter,* 91 Ariz 7, 368 P2d 753, 755 (1962), and that the intent to substitute the new promise for the original liability must be clearly shown. *American Textile Machine Corp. v. United States,* 220 F2d 584, 587-588 (6th Cir 1955) ; Beattie v. Traynor, 114 Vt 495, 49 A2d 200, 205 (1946). The Restatement of Contracts, in § 419, provides a rule of guidance in interpretation of doubtful agreements which depends upon the nature of the prior claim.[4] The comments to this section explain the reasons upon which it is based:

"* * * Where the debt is liquidated or the claim is overdue, the creditor generally will not enter into a bargain for an immediate cancellation of his claim without obtaining satisfaction and not merely a promise of it. Where, however, he has an unmatured claim for an unliquidated amount, there is no reason to suppose that he will not be willing to substitute immediately for his present executory claim for an uncertain amount an executory claim

[4] "Where a contract is made for the satisfaction of a pre-existing contractual duty, or duty to make compensation, the interpretation is assumed in case of doubt, if the pre-existing duty is an undisputed duty either to make compensation or to pay a liquidated sum of money, that only performance of the subsequent contract shall discharge the pre-existing duty; but if the pre-existing duty is of another kind, that the subsequent contract shall immediately discharge the pre-existing duty, and be substituted for it."

for something certain. In either case, however, the creditor may make either kind of bargain. The rule stated in the Section is merely one of presumption." Comment *a* to § 419.

In *Washington v. Heid,* in which the pre-existing obligations were a judgment and a note, we pointed out that the nature of the prior claim may be of importance in determining the proper interpretation of the new agreement in doubtful cases.[9] We recognized, however, that the basic question, as in all cases of interpretation of contracts, is the intent of the parties.

■ So far as the record before us discloses, plaintiff's liability to the state, although unliquidated prior to the execution of the agreement, was undisputed. The amount of plaintiff's liability in double damages could be readily determined by reference to the quantity of timber cut and the prevailing market price. See *United States v. Firchau,* 234 Or 241, 380 P2d 800 (1963). There is no indication that it was the subject of real disagreement between the parties. The settlement agreement accomplished two things; it designated a specific amount due on account of the trespass, and it permitted plaintiff, upon making the scheduled payments, to remove and sell the logs. Under the circumstances, we are convinced that the parties to the agreement intended that the settlement of the trespass claim would be consummated only when plaintiff performed its agreement to pay the state in full.

---

[9] We said there, in dictum:

"* * * where the original obligation is unliquidated and the subsequent agreement is for a definite sum, courts will usually hold the subsequent agreement to be a substituted contract. * * *" 264 Or at 184, 504 P2d at 748.

This language should not be taken to mean that there are separate rules of law governing agreements to settle liquidated and unliquidated claims.

Since the plaintiff has breached the settlement agreement by paying no part of the amount due the state, it has not "discharged a legal obligation owed to a third party", which is one of the necessary elements of an action for indemnity. The plaintiff is certainly still liable to the state and if the defendants were liable to the state for plaintiff's trespass plaintiff has not discharged that liability.

If we assume that plaintiff can still settle with the state by paying the balance of $10,591 due under the agreement it is conceded by plaintiff that up to the time of trial it had paid no part of that sum.

■ But even if it should be held that the state intended to release its claim against plaintiff upon the execution of the agreement, it would not follow that plaintiff could recover in this case. This is so because, in order to be entitled to indemnity, plaintiff must also show that it has discharged defendants' liability as well as its own.

■ Where a plaintiff obtains a judgment against one of several joint tortfeasors, and the judgment constitutes an adjudication of all of plaintiff's damage, satisfaction of that judgment discharges each of the other tortfeasors from liability. *Welbourn v. Firemen's Insurance,* 253 Or 45, 49, 453 P2d 167 (1969). Also, any payment made by one joint or concurrent tortfeasor reduces, *pro tanto,* the amount of the claim which plaintiff may enforce against the others. *Kirby v. Snow,* 252 Or 592, 595, 451 P2d 866 (1969); *Shore v. Livengood,* 234 Or 280, 282, 381 P2d 492 (1963); *Hicklin v. Anders,* 201 Or 128, 136, 253 P2d 897, 269 P2d 521 (1954). However, this jurisdiction no longer follows the antiquated rule that any release of one joint tortfeasor necessarily releases all the others. Instead, such a release will be given the effect intended by the parties.

*Cranford v. McNiece,* 252 Or 446, 452, 450 P2d 529 (1969); *Hicklin v. Anders,* supra, 201 Or at 135. There is not the slightest evidence in this case that either plaintiff or the state intended that their agreement, prior to its performance by plaintiff, would operate to release whatever claims the state might have against these defendants.

■ In summary, it is clear that regardless of the effect of the settlement agreement as between plaintiff and the state, that agreement does not operate to protect these defendants against a claim by the state that they are also liable for the trespass. Nor has plaintiff made any payment which reduces their potential liability. It follows, therefore, that plaintiff has not "discharged" the trespass liability to the state so as to entitle it to indemnity from these defendants.

In its reply brief plaintiff points out that it attempted to show, by an offer of proof, out-of-pocket expenses of approximately $8,500 incurred in falling, bucking, and hauling the logs, which were later sold by the state. The trial court's failure to admit and consider this evidence is not assigned as error. Although the question is not, for this reason, properly before us, we observe that the trial court's ruling appears to be correct because these expenses were not pleaded as an element of damage. We express no opinion as to whether they could have been recovered had the question been properly raised by the pleadings in the trial court.

We conclude that the trial court must be affirmed on the ground that it correctly construed the agreement and consequently need not consider the contentions raised by defendants.

Affirmed.