Argued and submitted December 23, 1981, reversed and remanded
with instructions July 21, reconsideration denied September 2,
petition for review denied October 5, 1982

# SECURITY NATIONAL BANK,
## *Appellant - Cross-Respondent,*
### *v.*
# SLOAN,
## *Respondent - Cross-Appellant.*
## (No. A7702-02385, CA 19888)
648 P2d 861

Milton C. Lankton, P.C., Portland, argued the cause for appellant - cross-respondent. With him on the briefs was Black, Kendall, Tremaine, Boothe & Higgins, Portland.

David W. Dardano, Portland, argued the cause for respondent - cross-appellant. With him on the brief were Lincoln D. Gardner, and Dardano, Mowry & Griffiths, P.C., Portland.

Before Buttler, Presiding Judge, and Warden and Warren, Judges.

WARREN, J.

## WARREN, J.

In this action to recover on a personal guaranty signed by defendant, plaintiff (bank) appeals from a judgment for defendant after a jury trial. Defendant cross-appeals.

We characterize the facts in the light most favorable to defendant. Defendant was a 25 percent shareholder and director of a corporation named California Auto Auction (Cal-Auto). In March, 1975, Cal-Auto obtained loans from the bank, which required defendant to execute a continuing guaranty. The guaranty for up to $550,000 was mailed to defendant, and he signed it. At the time of the loan, it was understood by defendant that the mix of future indebtedness was to be $300,000 in a drafting line of credit and $200,000 in a flooring line. The bank sent defendant, along with the guaranty to be executed, a copy of a so-called three-party agreement between plaintiff, Cal-Auto and a corporation named Lawrence Systems (Lawrence). Under this agreement, to which defendant was not a party, Lawrence was to keep records on Cal-Auto's inventory items in which the bank had a security interest and report any inventory losses to the bank.

In May, 1976, defendant met with the other 75 percent shareholder and an agent of the bank to discuss Cal-Auto's request to increase its inventory flooring line from $200,000 to $300,000. At that time, defendant expressed his view that he did not want to guarantee more than 25 percent of the total indebtedness, proportionate to his share of ownership in the company. At that meeting, defendant orally revoked his guaranty agreement and signed a new one, prepared by the bank's agent at his direction, that limited defendant's liability to 25 percent of the total indebtedness. The bank's agent told defendant that he would get back to him in two weeks if the bank did not accept the new guaranty. Defendant, however, heard nothing further from the bank. In November, 1976, defendant revoked his original guaranty in writing. In response, the bank immediately called in its loans. Because of Cal-Auto's financial difficulties, particularly those created by the loss or theft of automobiles from the inventory, Cal-Auto's obligations to the bank remained unsatisfied in the amount of $165,724.08.

We need not consider each of plaintiff's 19 assignments of error and each of defendant's seven assignments on the cross-appeal. On its face, the first written guaranty, the relevant provisions of which are set forth in the margin,[1] controls the issues in this case. It makes defendant liable for up to $550,000 on losses arising out of loans extended by the bank to Cal-Auto. Because we conclude

---

[1]

"For valuable consideration, the undersigned [defendant] (hereinafter called Guarantors) jointly and severally unconditionally guarantee and promise to pay Security National Bank (hereinafter called Bank), or order, on demand, in lawful money of the United States, any and all indebtedness of California Auto Auction, Inc. (hereinafter called Borrowers) to Bank. * * *

"The liability of Guarantors shall not exceed at any one time the sum of Five hundred fifty thousand and no/100------- Dollars ($550,000) for principal, together with all interest upon the indebtedness or upon such part thereof as shall not exceed the foregoing limitation. Notwithstanding the foregoing, Bank may permit the indebtedness of Borrowers to exceed Guarantors' liability. This is a continuing guaranty relating to any indebtedness, including that arising under successive transactions which shall either continue the indebtedness or from time to time renew it after it has been satisfied. This guaranty shall not apply to any indebtedness created after actual receipt by Bank of written notice of its revocation as to future transactions. Any payment by Guarantors shall not reduce their maximum obligation hereunder, unless written notice to that effect be actually received by Bank at or prior to the time of such payment.

" * * * * *

"Guarantors authorize Bank, without notice or demand and without affecting their liability hereunder, from time to time to (a) renew, compromise, extend, accelerate or otherwise change the time for payment of, or otherwise change the terms of the indebtedness or any part thereof, including increase or decrease of the rate of interest thereon; (b) take and hold security for the payment of this guaranty of the indebtedness guaranteed, and exchange, enforce, waive and release any such security; (c) apply such security and direct the order or manner of sale thereof as Bank in its discretion may determine; and (d) release or substitute any one or more of the endorsers or guarantors. Bank may without notice assign this guaranty in whole or in part.

"Guarantors waive any right to require Bank to (a) proceed against Borrowers; (b) proceed against or exhaust any security held from Borrowers; or (c) pursue any other remedy in Bank's power whatsoever. * * * Guarantors waive any defense arising out of the absence, impairment or loss of any right of reimbursement or subrogation or other right or remedy of Guarantors against Borrowers or any such security, whether resulting from such election by Bank, or otherwise. * * * Guarantors waive all presentments, demands for performance, notices of non-performance, protests, notices of protest, notices of dishonor, and notices of acceptance of this guaranty and of the existence, creation, or incurring of new or additional indebtedness. * * *"

that the original guaranty is controlling, we reject defendant's contention that the second guaranty makes him liable for only 25 percent of the losses. We turn to consider each of defendant's affirmative defenses to ascertain whether the trial court properly denied the bank's motion for a directed verdict.

■ ■  Defendant's first affirmative defense was that a contingent settlement constituted payment in full of his obligations under the guaranty. The settlement was an attempt to resolve the bank's claims against Lawrence in light of two pending lawsuits in California by Lawrence against Cal-Auto and the 75 percent shareholder, and by the bank against Lawrence, Cal-Auto, the 75 percent shareholder and defendant, as well as this litigation. Under the terms of the settlement, the bank was first to exhaust its remedies against defendant, the 75 percent shareholder as guarantor and Cal-Auto. In the event the bank recovered nothing or recovered an inadequate amount from those parties, Lawrence agreed to pay the bank a sum fixed by a formula in the agreement. That the bank had secured to itself an alternative source of recovery in the event that its litigation against defendant and others proved unsuccessful is no defense for defendant in this litigation. An agreement to pay on condition is not payment. *See Savelich Logging v. Preston Mill Co.,* 265 Or 456, 465-66, 509 P2d 1179 (1973). The defense was properly stricken.

■  ·  Defendant's second affirmative defense, which the trial court struck on the bank's motion, was that by sending the three-party agreement to defendant along with the guaranty, the bank falsely represented that it would exhaust remedies against Lawrence before proceeeding against defendant and that such "fraud" rendered the guaranty agreement unenforceable. The three-party agreement does require Lawrence to pay the bank all losses sustained by the bank resulting from Lawrence's failure to discharge its obligations under the three-party agreement, but it contains no language governing the manner in which the bank would seek recovery against anyone. There is no evidence of any concomitant oral or written representation made by the bank to defendant. The inference that defendant drew from receiving a copy of an agreement, to which he was neither a party nor a third-party beneficiary, is in

direct conflict with the express provision in the guaranty, *supra* n 1, to which he was a party, stating that the bank need not first pursue remedies against any others. The trial court properly struck this defense.

■ Defendant's third affirmative defense was that the guaranty was rendered invalid by the bank's modification of the mix of flooring and drafting lines of credit by increasing the flooring line by $100,000. The written guaranty provided for an upper limit of $550,000 liability. That limit was not exceeded here. The guaranty also gave the bank power, without notice or demand to defendant, to "change the terms of the indebtedness or any part thereof." Regardless of defendant's disapproval in May, 1976, of the change of mix, the written guaranty permitted it, and hence the guaranty could not be rendered invalid by the change. We similarly can dispose of defendant's fourth affirmative defense that defendant was entitled to a *pro tanto* reduction in his liability under the guaranty for what is said by defendant to be a unilateral increase in exposure created by the change in mix. Defendant agreed to that at the outset.

■ Defendant's theory in the fifth affirmative defense was that the original guaranty was revoked by his oral revocation on May 26, 1976, followed by submission of a new guaranty, whether or not the bank accepted the second guaranty. It is important to note what defendant does not contend here. He does not argue that the oral revocation was accepted and acted on by the bank and that it therefore relieves the guarantor. Defendant thus does not bring his case within the general rule stated in 38 CJS 1175, Guaranty § 36, to that effect. Nor does defendant argue that the second guaranty was accepted as a substitution for the first, which would bring this case within the rule that a guarantor may be released from liability by a subsequent guaranty if it appears that the later guaranty was intended and accepted as a substitute for the former. 38 CJS 1250, Guaranty § 80. Rather, defendant asks us to hold that an attempted oral revocation coupled with the *offer* of a new guaranty covering the same loan is sufficient to satisfy the requirement of written revocation, absent acceptance by the bank of either. No authority of any sort has been cited

to us for that proposition, and we decline to fashion such a rule. Under the original guaranty, defendant was required to submit an express written revocation in order for it to be effective. He did not do so in May, 1976, and the trial court erred in submitting the defense to the jury.

■ Defendant's sixth affirmative defense was that the written guaranty was null and void, because the bank failed first to demand payment from Cal-Auto and proceed against its assets. This claim, again, is governed by the written guaranty, *supra* n 1, which expressly provides that the bank was not required first to proceed against the borrowers or "to pursue any other remedy in Bank's power whatsoever." The trial court did not err in striking this defense.

■ Defendant's seventh affirmative defense was that the bank was estopped to assert the original guaranty, because defendant detrimentally relied on his understanding that, by increasing the inventory line of credit without notice to him, the bank thereby accepted the new guaranty agreement in lieu of the original. The trial court tried this claim without a jury as an equitable defense and found in favor of the bank. That result is amply supported by the record. No notice was required to be given to defendant in changing the terms of indebtedness. The change of mix was permitted by the original guaranty and hence could not indicate an intention not to rely on it. Defendant's understanding of the situation was therefore mistaken. We conclude that the trial court could properly find the bank was not estopped from relying on the original guaranty.[2]

■ Defendant contended in the eighth affirmative defense that by increasing the amount of the inventory line in May, 1976, the bank somehow waived the requirement that notice of revocation be in writing. We have already determined that the bank was not prohibited under the guaranty from increasing the inventory line as it did; it follows that the guaranty's requirement that revocation be in writing was not waived.

---

[2] Defendant does not argue under this assignment of error that the bank was estopped to deny it had accepted the new guaranty by its failure to respond to the offer of the new guaranty within two weeks.

■     Finally, defendant's ninth affirmative defense was that, because the bank failed to act in a reasonable manner in the protection of the corporate assets,[3] the value of the inventory should be offset against any sum owed by defendant to the bank. Defendant argues that, because the three-party agreement made Lawrence in some respects the agent of the bank, the bank was in constructive possession of Cal-Auto's automobiles and that the bank owed some duty to defendant to preserve the inventory. If we assume *arguendo* that the UCC concept of preserving collateral is applicable in this context, the guaranty provides that defendant waives *"any defense arising out of the absence, impairment or loss of* any right of reimbursement or subrogation or other right or remedy of Guarantors against Borrowers or *any * * * security [held from Cal-Auto] * * *."* (Emphasis added.) Under the terms of the guaranty, therefore, this defense would fail, even if the bank possessed some duty to defendant to preserve the inventory. The ninth affirmative defense should have been stricken by the trial court.

Because as a matter of law none of defendant's affirmative defenses can be sustained, we conclude that the trial court erred in not directing a verdict for the bank in the amount prayed for.

Reversed and remanded with instructions to enter judgment for plaintiff in the amount of $165,724.08.

---

[3] In the trial court, defendant cited ORS 79.2070, which provides, in part:

"(1) A secured party must use reasonable care in the custody and preservation of collateral in his possession. * * *

"* * * * *

"(3) A secured party is liable for any loss caused by his failure to meet any obligation imposed by subsections (1) and (2) of this section but does not lose his security interest."