307 S.C. 260 (1992)
414 S.E.2d 590
FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF SOUTH CAROLINA, Respondent
v.
Clyde M. DANGERFIELD, Jr., Linda Dangerfield, John Watkins, Judy Watkins and Margaret H. Bivens, of whom Margaret H. Bivens, is Appellant. Appeal of Margaret H. BIVENS.
1774
Court of Appeals of South Carolina.
Heard November 12, 1991.
Decided February 24, 1992.
Reh. Den. March 18, 1992.
*261 Walter E. Bilbro, Jr. of Bilbro & Associates, and Fred Thompson, III of Scardato & Thompson, Charleston, for appellant.
John J. Dodds, III of Woody, Bargmann, Cisa, Stiles & Dodds, Charleston, for respondent.
Heard Nov. 12, 1991;
Decided Feb. 24, 1992.
Reh. Den. March 18, 1992.
BELL, Judge:
First Federal Savings and Loan Association filed this action against the Defendants, jointly and severally, seeking to collect on Guaranty Agreements executed in favor of First Federal. The trial judge granted First Federal's motion for summary judgment. Margaret Bivens appeals. We affirm.
*262 Under Rule 56(c) S.C.R. Civ. P. Summary judgment must be granted if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. See, Estate of Cantrell v. Green, 302 S.C. 557, 397 S.E. (2d) 777 (Ct. App. 1990).
Clyde Dangerfield, John Watkins, and Joseph Bivens incorporated A Professional Moving and Storage of Charleston, Inc. Dangerfield contributed some capital and leased the company certain equipment. Bivens's wife, Margaret, leased the company approximately $200,000 worth of trucks and moving equipment.
Dangerfield, Watkins, and Mrs. Bivens were to be equal shareholders in the Charleston company. Watkins served as president, Dangerfield as vice president and secretary, and Greg Kimsey as treasurer. Watkins managed the Charleston company with Mr. Bivens as an employee. Mrs. Bivens was not involved in the management or operation of the Charleston company. At about the same time the Charleston company was being started, Watkins was opening another moving and storage company in Greenville. Its name was "A Professional Moving and Storage, Inc."
In early November, 1987, Dangerfield, Kimsey, and Watkins, as officers of the Charleston company, met with Joseph Palisi, vice president of First Federal, about a loan for the Charleston company. After completing the loan application, Palisi approved two loans for the Charleston company. One loan was a term loan in the amount of $170,000 and the second was an $80,000 revolving line of credit. Both loans listed the borrower as "A Professional Moving and Storage, Inc."
The loans were secured by the Charleston company's moving equipment, warehouse equipment and receivables. Palisi also required personal guaranties from the stockholders and their spouses. He, however, did not require Mr. Bivens to give a personal guaranty. The primary obligor on all five of the personal guaranties was "A Professional Moving and Storage, Inc." The term of the guaranty was to continue until the obligation was retired or until the guarantors gave First Federal written notice of termination.
In accordance with the loan agreement, First Federal, on November 11, 1987, issued a check to A Professional Moving *263 and Storage, Inc. in the amount of $169,804 representing the proceeds from the $170,000 loan. On December 4, 1987, Watkins, as president of the Charleston company, requested a draft on the $80,000 line of credit. As Watkins requested, First Federal transferred the $80,000 into two separate banking accounts maintained by the Charleston company.
In late November, 1987, the Charleston company's bookkeeper, Mary Cooney, told Mr. Bivens, Dangerfield had taken a large sum of money from the bank loan. She also said he had inflated the financial information on the loan application. Mr. Bivens told his wife this information. Mrs. Bivens asked her husband to talk to Palisi at the bank. When Mr. Bivens went to the bank, he told Palisi he had information that the loan was being used improperly. He told Palisi the funds were being used for another company in Greenville. He asked to see the Charleston company's loan application because he felt Dangerfield had used false financial information to obtain the loan. Palisi refused. After Mr. Bivens left, Palisi called Dangerfield who told him Mr. Bivens was a disgruntled employee and not to listen to him.
Subsequently, Mrs. Bivens requested the Charleston company to account for the loan proceeds. At the accounting in early December, 1987, the records showed the Charleston company paid Dangerfield $50,000 and Watkins $23,000 among other payments.
Thereafter, in the presence of Mrs. Bivens and Dangerfield, Mr. Bivens called Palisi and told him about the payments to Dangerfield and Watkins. He asked Palisi to stop any payments to the Charleston company and to do whatever was necessary to prevent any more loss. Palisi asked to speak with Dangerfield. Dangerfield told him he would see him in a couple of days.
During the latter part of the first quarter of 1988, Watkins and Dangerfield told Palisi the Charleston company was not doing well and the officers and directors had decided to sell it as a going concern or in the alternative to wind it up and liquidate its assets. Palisi advised Dangerfield to keep him informed of the company's efforts to sell the assets but the loan payments must be kept current. Several pieces of equipment were sold and the sale price applied towards the loan.
*264 On June 27, 1988, Watkins and Dangerfield, as officers of the Charleston company, applied and received an extension of the loan payment from First Federal. The extension allowed the late principal and accrued interest payments to be paid in full within a period of 60 days. Palisi did not advise Mrs. Bivens of this change. Two days later, the Charleston company filed for bankruptcy.

I.
Mrs. Bivens argues summary judgment was improper because there existed a material issue of fact as to whether she is liable on her guaranty when the loan documents incorrectly listed the Greenville company as the borrower instead of the Charleston company.
The name of Mrs. Bivens's company was A Professional Moving and Storage of Charleston, Inc. Watkins began another moving company under the name of A Professional Moving and Storage, Inc., in Greenville. Mrs. Bivens asserts all of the loan documents and her guaranty were in the name of the Greenville company. She contends she should not be liable for a company's debt in which she has no pecuniary interest.
It is undisputed that Watkins and Dangerfield, as officers of the Charleston company, were given the authority by a corporate resolution to borrow money from First Federal. They prepared the loan documents listing the Charleston company's name as "A Professional Moving and Storage, Inc." Palisi approved the loan to A Professional Moving and Storage, Inc., with the understanding that the Charleston company was the borrower. His uncontradicted testimony was that he first became aware of the Greenville company's existence when Mr. Bivens first came to see him, three weeks after the loan was made. From the undisputed facts, it is clear First Federal disbursed the funds to the Charleston company. The checks were made payable to the Charleston company. The Charleston company's accounting statements clearly show the loan proceeds were deposited into its accounts. There is no evidence First Federal paid any of the loan proceeds to the Greenville company. In fact, Mrs. Bivens admits the Charleston company did borrow $250,000 from First Federal. The only reasonable inference to be *265 drawn from the evidence is that the loan was made to the Charleston company. There is no genuine issue of fact on this point. Once the loan proceeds were disbursed to the Charleston company in accordance with the loan agreement, First Federal had no duty to superintend the affairs of the corporation to see that the proceeds of the checks were applied to the corporation's business. See, First National Bank of Hailey v. G.V.B. Mining Company, 89 F. 439 (C.C.D. Idaho 1898), modified, 95 F. 23 (9th Cir.1899). Therefore, summary judgment was proper.
In her brief, Mrs. Bivens also argues she is entitled to cancel her guaranty because the Guaranty Agreement was altered by changing the name of the primary obligor after her signature and there was fraud in the execution of the Guaranty Agreement. However, there is no exception raising these issues. We, therefore, do not address them. Bellamy v. Payne, 304 S.C. 179, 403 S.E. (2d) 326 (Ct. App. 1991).

II.
Mrs. Bivens argues the trial judge erred in granting summary judgment to First Federal because she communicated her intent to revoke her guaranty before the final disbursal of the loan funds.
By the terms of the agreement, the guaranty was to remain in effect until the loan was repaid or until Mrs. Bivens gave First Federal written notice of revocation. Mrs. Bivens does not allege she gave written notice of revocation. However, she asserts her actions and those of her husband communicated her intent not to be bound by the guaranty.
Joseph Bivens testified his initial conversation with Palisi was on November 30 or December 1, 1987. He told Palisi about the money being diverted for purposes other than those stated in the loan application. He asked Palisi to take some action which would protect the bank and his wife. Mrs. Bivens asserts Palisi nevertheless advanced $80,000 on the line of credit on December 4, 1987. Palisi stated he had no contact with Mr. Bivens until after December 4th. Palisi states after Mr. Bivens initial visit, he checked the bank records and discovered the entire amount of the loan had been distributed. Mrs. Bivens asserts these actions created a jury question as to *266 whether she manifested a desire not to be bound by her guaranty before disbursement of the funds.
In our view, the oral communications from Mr. Bivens to Palisi prior to December 4th, did not constitute a revocation by Mrs. Bivens of her guaranty. In any event, however, those communications are immaterial for purposes of summary judgment. There is no dispute that Mrs. Bivens failed to give written notice of revocation, as required by the Guaranty Agreement, before First Federal disbursed the funds. There is no evidence First Federal or Palisi, acting on its behalf, agreed to modify the requirement that revocation be in writing. Therefore, any attempts by Mrs. Bivens to revoke the guaranty orally before the funds were disbursed would not be effective. See, Security National Bank v. Sloan, 58 Or. App. 316, 648 P. (2d) 861 (1982); Cf. Yamaha International Corporation v. Parks, 72 N.C. App. 625, 325 S.E. (2d) 55 (1985) (mutual consent is as much a requisite in effecting a contractual modification as it is in the initial creation of a contract).

III.
Finally, Mrs. Bivens argues summary judgment was not proper because there existed a dispute as to whether First Federal breached implied covenants of good faith and fair dealing.
Mrs. Bivens asserts First Federal breached these covenants by not locating and safeguarding the collateral after being told of the problems at the Charleston company. She asserts had First Federal taken these actions, her liability would have been less.
Bivens's guaranty states,
First Federal shall retain the right from time to time, without further notice to or consent of the undersigned, to deal with all or any of the Obligations, and any collateral or security therefor, as First Federal may deem advisable in its sole discretion.... The rights granted to First Federal hereunder shall be cumulative with all other rights of First Federal and First Federal may select and assert its remedies against the undersigned, or any other maker, endorser or guarantor of the Obligations or against any security or collateral therefor.
*267 The guaranty gave First Federal the right to seek payment from the guarantors without pursuing collection against the Charleston company's collateral. Mrs. Bivens maintains First Federal breached an implied duty by doing what the contract expressly permitted it to do. There is no breach of an implied covenant of good faith where a party to a contract has done what the provisions of the contract expressly gave him the right to do. Automatic Sprinkler Corporation of America v. Anderson, 243 Ga. 867, 257 S.E. (2d) 283 (1979).
Affirmed.
SHAW and CURETON, JJ., concur.