7 F.3d 152
 8 IER Cases 1546
 David B. BOTEFUR, Plaintiff-Appellant,
v.
CITY OF EAGLE POINT, OREGON, a municipal corporation and
political subdivision of the State of Oregon;
Leon Sherman, an individual; Steven
Jenny, an individual,
Defendants-Appellees.
 No. 92-35261.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 13, 1993.
Decided Oct. 7, 1993.
 
 Jeffrey J. Bennett, Fountain Rhodes, Portland, OR; Jeffrey H. Boiler, Eugene, OR, for plaintiff-appellant.
 Janet M. Schroer, Hoffman, Hart & Wagner, Portland, OR, for defendants-appellees.
 Appeal from the United States District Court for the District of Oregon.
 Before: GOODWIN, FARRIS, and THOMPSON, Circuit Judges.
 FARRIS, Circuit Judge:
 
 
 1
 David Botefur appeals the district court's dismissal of his civil rights action against the City of Eagle Point, its mayor, and its chief of police. Botefur alleged that his employment with the City was terminated in violation of his constitutional rights. The district court held that Botefur's failure to tender to the City consideration he received pursuant to a valid release agreement precluded him from bringing a civil rights action based on the conduct for which the City had been released. It also held that under Oregon law, the release agreement was a substituted contract that barred Botefur from suing the City for its allegedly unconstitutional conduct. We have jurisdiction pursuant to 28 U.S.C. § 1291 (1988). We affirm.
 
 I.
 
 2
 After Botefur's employment with the City was terminated, he and the City executed a written mutual release agreement. Botefur agreed to release the City and its agents from claims arising from the termination of his employment. The City agreed: (1) to reinstate Botefur to his prior employment, effective on the date of execution of the agreement; (2) to pay Botefur $10,000; (3) to seal from inspection Botefur's personnel file; and (4) to provide Botefur's prospective employers only a specified, pre-approved statement. In addition to releasing the City, Botefur agreed to resign, and did resign, immediately upon reinstatement.
 
 
 3
 Botefur commenced this action, under 42 U.S.C. § 1983 (1988), approximately one year after the execution of the release agreement. He alleged that the City violated various of his constitutional rights in terminating his employment and in breaching the provisions of the agreement concerning public disclosure of his personnel records. The district court dismissed Botefur's claims on summary judgment.
 
 II.
 A.
 
 4
 We review de novo an appeal from summary judgment. Jones v. Union Pac. R.R., 968 F.2d 937, 940 (9th Cir.1992). We must determine whether, viewing the evidence in the light most favorable to Botefur, there are any genuine issues of material fact, and whether the district court applied correctly the relevant substantive law. See Federal Deposit Ins. Corp. v. O'Melveny & Meyers, 969 F.2d 744, 747 (9th Cir.1992).
 
 B.
 
 5
 The district court held that Botefur's failure to tender the $10,000 payment within a reasonable time barred him from rescinding the release agreement and proceeding on his § 1983 claims. The district court did not indicate whether its ruling was based on state or federal law. Botefur seeks to have us apply federal law to this issue, relying on Hogue v. Southern Ry. Co., 390 U.S. 516, 517, 88 S.Ct. 1150, 1151, 20 L.Ed.2d 73 (1968) (per curiam), for the proposition that federal law controls and for the proposition that a tender back is not required prior to the initiation of an action that is based on claims purportedly released by a release agreement.
 
 
 6
 Botefur did not argue to the district court that federal law should be applied. Ordinarily, we do not consider arguments presented for the first time on appeal. United States v. Stenberg, 803 F.2d 422, 431 (9th Cir.1986). A discretionary exception to this rule exists where the issue is purely legal. Jovanovich v. United States, 813 F.2d 1035, 1037 (9th Cir.1987). We previously have invoked the exception in the context of a horizontal conflict of laws. See Telco Leasing, Inc. v. Transwestern Title Co., 630 F.2d 691, 693-94 (9th Cir.1980). Today, we invoke it to resolve a vertical conflict.
 
 C.
 
 7
 In Hogue, the petitioner executed a release agreement, releasing his employer from potential claims in consideration of a payment of $105. The petitioner subsequently instituted an action under the Federal Employers' Liability Act, 45 U.S.C. §§ 51-60 (1988), without first offering to return the consideration. The Supreme Court held that "[t]he question whether a tender back of the consideration was a prerequisite to the bringing of the suit is to be determined by federal rather than state law." Hogue, 390 U.S. at 517, 88 S.Ct. at 1151; cf. Counts v. Burlington N. R.R., 896 F.2d 424, 425 (9th Cir.) (stating that a challenge to the validity of a FELA release presents a question of federal law), cert. denied, 498 U.S. 815, 111 S.Ct. 54, 112 L.Ed.2d 30 (1990); Jones v. Taber, 648 F.2d 1201, 1203 (9th Cir.1981) ("The conditions affecting the validity of a release of significant federal rights are eminently a matter of federal law, and we find it unnecessary to examine Oregon authorities.").
 
 
 8
 Similarly, in Smith v. Pinell, 597 F.2d 994, 996 (5th Cir.1979) (per curiam), the Fifth Circuit vacated an order of the district court because the district court erroneously had applied state law in determining whether a tender back of consideration was prerequisite to the initiation of an action under the Jones Act, 46 U.S.C. app. § 688 (1988).
 
 
 9
 The City attempts to distinguish Hogue and Smith as follows:
 
 
 10
 In each of these cases raised by plaintiff for the first time on appeal, the underlying validity of the release of important federal rights was being challenged. Hence, federal law was applied to determine whether that release was valid and in litigating that federal issue, federal law was applied on the tender requirement as well.
 
 
 11
 (Emphasis added.) The City would have us believe that the Supreme Court and the Fifth Circuit triflingly applied federal law to the tender issue. We reject the contention. Hogue and Smith specifically held that federal, not state, law applies. Hogue, 390 U.S. at 517, 88 S.Ct. at 1151; Smith, 597 F.2d at 996.
 
 D.
 
 12
 Federal law must be the source of the rule we apply. We next decide whether to incorporate the state rule of "tender back" (assuming Oregon law requires tender[1]) as the content of the federal rule.
 
 
 13
 The doctrine of federal incorporation or "borrowing" of local law is well established. Brown v. United States, 742 F.2d 1498, 1503 (D.C.Cir.1984) (en banc), cert. denied, 471 U.S. 1073, 105 S.Ct. 2153, 85 L.Ed.2d 509 (1985). Incorporation is appropriate where reference to state law is necessary to effectuate the federal policies underlying a federal statutory scheme. See id. at 1504. In the civil rights context, we incorporate state law only where federal law is "deficient in the provisions necessary to furnish suitable remedies," and where the state rule is not "inconsistent with the Constitution and laws of the United States." 42 U.S.C. § 1988 (1988).
 
 
 14
 In Felder v. Casey, 487 U.S. 131, 140, 108 S.Ct. 2302, 2307, 101 L.Ed.2d 123 (1988), the Supreme Court discussed the possibility of incorporating into an action under § 1983 a state rule requiring notice-of-claim as a prerequisite to suit. The Court agreed with the federal appellate courts that previously had reasoned that "the absence of any notice-of-claim provision [in § 1983] is not a deficiency requiring the importation of such [state] statutes into the federal civil rights scheme." Id. Felder distinguished notice-of-claim rules from statutes of limitation, which the Court previously had ruled could be borrowed, see, e.g., Wilson v. Garcia, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), as follows:
 
 
 15
 Because statutes of limitation are among the universally familiar aspects of litigation considered indispensable to any scheme of justice, it is entirely reasonable to assume that Congress did not intend to create a right enforceable in perpetuity. Notice-of-claim provisions, by contrast, are neither universally familiar nor in any sense indispensable prerequisites to litigation, and there is thus no reason to suppose that Congress intended federal courts to apply such rules,....
 
 
 16
 Felder, 487 U.S. at 140, 108 S.Ct. at 2308.
 
 
 17
 A tender-back requirement is neither "indispensable to any scheme of justice" nor an "indispensable prerequisite to litigation." Thus, we see no reason to borrow a state law rule conditioning the initiation of a § 1983 action upon the tendering of any consideration received previously. Cf. Smith, 597 F.2d at 996 (stating that there is no "justification for qualifying a seaman's rights under the Jones Act by incorporating a state's substantive law governing an action for rescission").
 
 
 18
 Moreover, the rule announced in Hogue, that tender back is not required for suit under the FELA, is generalizable to suits under other federal compensatory statutes. Compare Hogue, 390 U.S. at 518, 88 S.Ct. at 1152 (describing the policy of the FELA as providing " 'railroad employees a right to recover just compensation for injuries negligently inflicted by their employers.' " (quoting Dice v. Akron, C. & Y. R.R., 342 U.S. 359, 362, 72 S.Ct. 312, 314, 96 L.Ed. 398 (1952)) with Felder, 487 U.S. at 141, 108 S.Ct. at 2308 (noting that "the central purpose of the Reconstruction-Era laws is to provide compensatory relief to those deprived of their federal rights by state actors"). Because Hogue can be read broadly, federal law cannot be deemed truly "deficient," for it contains a rule that encompasses the present situation. Without a recognizable deficiency, there can be no state law incorporation. Brown, 742 F.2d at 1504-05.
 
 E.
 
 19
 We have applied the rule in Hogue in the context of a challenge to the validity of a FELA release. See Counts, 896 F.2d at 425. Today we apply it to a release of claims under § 1983. We hold that a civil rights plaintiff is not required to return or offer to return consideration received pursuant to a valid release agreement as a prerequisite to initiating a § 1983 action premised on the violations purportedly released by the agreement.[2]
 
 III.
 
 20
 The interpretation of a settlement agreement is governed by principles of state contract law. Jeff D. v. Andrus, 899 F.2d 753, 759 (9th Cir.1990). This is so even where a federal cause of action is "settled" or "released." See United Commercial Ins. Serv., Inc. v. Paymaster Corp., 962 F.2d 853, 856 (9th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 660, 121 L.Ed.2d 585 (1992). The district court based its interpretation of the agreement on the "language of the agreement itself." Our review is de novo. Jeff D., 899 F.2d at 759.
 
 
 21
 The district court found that the agreement was unambiguous. Under Oregon law, the existence of an ambiguity in a contract is a question of law. Oregon Sch. Employees Ass'n, Chapter 89 v. Rainier Sch. Dist. No. 13, 311 Or. 188, 808 P.2d 83, 87 (1991). We therefore review the district court's finding de novo.
 
 
 22
 Unambiguous contracts must be enforced according to their terms. Id. In determining whether an ambiguity exists, we are "limited to the four corners of the document." Edwards v. Times Mirror Co., 102 Or.App. 440, 795 P.2d 564, 567 (1990). Only where an ambiguity exists does the trier of fact seek to ascertain the intent of the parties. Oregon Sch. Employees, 808 P.2d at 87. "A contract is ambiguous 'if it has no definite significance or if it is capable of more than one sensible and reasonable interpretation.' " Edwards, 795 P.2d at 567 (quoting Deerfield Commodities, Ltd. v. Nerco, Inc., 72 Or.App. 305, 696 P.2d 1096, 1104-05, rev. denied 299 Or. 314, 702 P.2d 1111 (1985)); see also Port of Portland v. Water Quality Ins. Syndicate, 796 F.2d 1188, 1194 (9th Cir.1986).
 
 
 23
 Botefur argues that the release agreement is ambiguous in that it does not indicate whether it is an "accord and satisfaction" or an "executory accord." If the agreement is an accord and satisfaction (or "substituted contract"), Botefur's § 1983 claim is extinguished. See Savelich Logging Co. v. Preston Mill Co., 265 Or. 456, 509 P.2d 1179, 1182 (1973) (in banc). His remedy, if he has one, would be for breach of contract. See id. In contrast, if the agreement is an executory accord, Botefur's underlying claim merely is suspended and is revived by the City's alleged breach. See id.
 
 
 24
 In Savelich, 509 P.2d at 1182, the Supreme Court of Oregon found that a settlement agreement was ambiguous where the agreement failed to include a provision specifying the timing of the release of the underlying claim. In Washington v. Heid, 264 Or. 179, 504 P.2d 745, 747 (1972) (in banc), the court found an agreement ambiguous because the agreement was silent as to the parties' intentions in the event of a breach.
 
 
 25
 Unlike the agreement in Savelich, the agreement between Botefur and the City provides that the disputed claim is to be released upon execution of the agreement:
 
 
 26
 In compromise of a disputed claim by Botefur against City relating to Botefur's separation from employment with City as a sworn police officer, the parties hereby fully and completely release and remise each other from any and all claims,....
 
 
 27
 Like the agreement in Heid, however, the release does not state the parties' intentions in the event of breach. A finding of ambiguity therefore would not be unprecedented.
 
 
 28
 We cannot, however, ignore the express language of the agreement, which provides that Botefur releases the City "[i]n consideration of the mutual promises and covenants contained herein." This language undermines Botefur's contention that he bargained for the City's actual performance of these promises as opposed to the City's mere promise to perform. Viewing the agreement as a whole, see Edwards, 795 P.2d at 568, we find that the City was to be released upon execution of the agreement (or at the latest upon payment of the $10,000 and Botefur's reinstatement to the police force), and that Botefur exchanged his rights under § 1983 for his contractual rights under the agreement. We therefore hold that the agreement unambiguously constitutes an accord and satisfaction.
 
 IV.
 
 29
 The mutual release agreement provides in relevant part:
 
 
 30
 In compromise of a disputed claim by Botefur against City relating to Botefur's separation from employment with City as a sworn police officer, the parties hereby fully and completely release and remise each other from any and all claims, ... which each may have against the other, ... to the extent such claims or other matters arise from the beginning of time to the date of execution of this Agreement....
 
 
 31
 (Emphasis added.) In his Amended Complaint, Botefur sets forth two claims for relief. The first alleges that the City terminated his employment unlawfully. That claim is precluded because Botefur exchanged his constitutional rights for his contract rights.
 
 
 32
 Botefur's second claim for relief alleges in part that his constitutional rights were violated subsequent to the execution of the release agreement. The agreement did not purport to release the City from liability for unconstitutional conduct occurring after its execution. As to those alleged violations, Botefur was free to elect his remedy: he could bring an action for breach of contract, or he could pursue a remedy under § 1983.[3] He chose the latter. The fact that the alleged unconstitutional conduct also might violate the terms of the release agreement has no bearing on Botefur's right to seek redress for that conduct under § 1983.
 
 
 33
 Botefur's right to file an action under § 1983, however, is not coterminous with his ability to state a valid cause of action under that section. Botefur's second claim for relief alleged that: (1) the City and its agents published false statements impugning Botefur's honesty; (2) Botefur suffered thereby an injury to his reputation; and (3) the reputational injury resulted in the deprivation of Botefur's liberty interest in the pursuit of future employment as a police officer. Injury to reputation alone does not result in a deprivation of a liberty or property interest protected by the Due Process Clause of the Fourteenth Amendment. Paul v. Davis, 424 U.S. 693, 712, 96 S.Ct. 1155, 1165, 47 L.Ed.2d 405 (1976); Fleming v. Department of Public Safety, 837 F.2d 401, 409 (9th Cir.) (an action for damage to reputation "lies ... in the tort of defamation, and not in section 1983"), cert. denied, 488 U.S. 889, 109 S.Ct. 222, 102 L.Ed.2d 212 (1988). To state a claim for relief under § 1983, Botefur was required to join his claim of reputational injury to a recognizable § 1983 wrong. See Buckey v. County of Los Angeles, 968 F.2d 791, 795 (9th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 599, 121 L.Ed.2d 536 (1992), and cert. denied, --- U.S. ----, 113 S.Ct. 600, 121 L.Ed.2d 536 (1992). Although he alleged that the false statements impaired his future employment prospects, Botefur did not state a valid § 1983 claim because the alleged defamatory statements were made, if at all, after Botefur resigned. See Siegert v. Gilley, 500 U.S. 226, ----, 111 S.Ct. 1789, 1794, 114 L.Ed.2d 277 (1991).
 
 V.
 
 34
 Under federal law, a plaintiff need not return or offer to return consideration received under a release agreement as a prerequisite to initiating a § 1983 action. The district court erred to the extent its dismissal of this action was based on Botefur's failure to tender the consideration he received.
 
 
 35
 The district court correctly determined, however, that Botefur is precluded from pursuing under § 1983 his first claim for relief. That claim was released by a valid agreement that constitutes an accord and satisfaction under Oregon law. Botefur's second claim for relief did not state a valid claim under § 1983. We therefore affirm the district court's judgment.
 
 
 36
 Each party shall bear its own costs of appeal.
 
 
 37
 AFFIRMED.
 
 
 
 [1]
 The parties disagree as to whether Oregon law requires a tender back as a prerequisite to the recision of a contract. Their disagreement centers around the applicability and significance of Burlington N. Inc. v. Lester, 48 Or.App. 579, 617 P.2d 906 (1980). We need not resolve this dispute over Oregon law
 
 
 [2]
 Botefur does not argue that the release is invalid, and with good reason. See Jones, 648 F.2d at 1203 (stating that a release of a § 1983 claim is valid, provided it "results from a decision that is voluntary, deliberate, and informed")
 
 
 [3]
 In fact, Botefur is free to pursue both remedies, though he may not be free to collect two judgments for the same injury