Submitted on briefs July 7, affirmed July 27, 1926.

## HERBERT GORDON *v.* CURTIS BROS. ET AL.

(248 Pac. 158.)

**Contracts.**

1. Contract partly in writing and partly oral is regarded as oral or verbal contract.

**Contracts.**

2. Rule that all preliminary negotiations and agreements are merged in final instrument does not prevent contract from being partly oral.

**Contracts.**

3. Whether entire contract was reduced to writing or independent collateral agreement made in fact question for jury, if there is any evidence sustaining oral agreement.

---

2. See 6 R. C. L. 640.

Contracts.

4. Contract consummated by series of independent acts is tentative until final assent, which vivifies entire transaction.

Contracts.

5. Though parties' minds must meet, assent of both need not be given at same instant.

Contracts.

6. To complete contract, assent must be given with express intention of forming contractual relation.

Contracts.

7. Assent requisite to agreement is either expressed or evidenced by circumstances from which it may be inferred.

Contracts.

8. Assent requisite to agreement must be manifested by acceptor's conduct.

Contracts.

9. Anything communicated to party making offer, manifesting formed determination to accept it completes contract.

Contracts.

10. Whether alleged house-moving contract, for breach of which plaintiff sued, was made, *held* for jury on plaintiff's testimony.

Contracts.

11. Date for performance of house-moving contract *held* fixed by parties' agreement at about ten days or two weeks after making it.

Contracts.

12. In action for breach of house-moving contract, plaintiff's testimony *held* sufficient to take to jury question of sufficient demand to proceed with work.

Damages—Refusal of Instruction That Interest Could not be Allowed in Action for Breach of Contract Held not Error, Where Plaintiff Claimed Interest Paid to Another Because of Breach (Laws 1917, p. 781).

13. In action for breach of house-moving contract, wherein plaintiff claimed amount he was compelled to pay in settlement of lease he had agreed to make, with interest thereon, refusal of instruction that interest could not be allowed in action in damages for breach of contract *held* not error, especially in view of Laws of 1917, page 781.

Damages.

14. Any damages reasonably supposed to have been contemplated when contract was made, and proximate, natural consequences of breach, may be recovered.

4. See 6 R. C. L. 616.
14. See 8 R. C. L. 451.

**Damages.**

15. Damages for breach include any reasonable sum necessarily paid by plaintiff because of breach, though a loss on collateral contracts.

**Trial—Refusal of Instruction to Find for Defendant if He was Ready and Offered to Perform Contract, and Plaintiff Refused to Perform, Did not Accept Defendant's Bid, and Abandoned Project, Held not Error, in View of Entire Charge Given.**

16. Refusal to instruct jury, in exact language requested, to find for defendant if he was ready, willing, and offered to perform contract, and plaintiff refused to perform, abandoned project, and did not accept defendant's bid, *held* not error, in view of entire charge given.

**Trial.**

17. Refusal of proper requested instructions is not reversible error, where charge given as whole substantially covers same matter.

**Trial.**

18. Motion for directed verdict cannot be granted, where there is any substantial evidence on all issues which jury may consider, as against moving party on issues made by pleadings.

Contracts, 13 **C. J.**, p. 246, n. 94, p. 285, n. 70, p. 685, n. 26.
Damages, 17 **C. J.**, p. 742, n. 84, p. 746, n. 98.
Evidence, 22 **C. J.**, p. 1283, n. 93, p. 1291, n. 62.
Trial, 38 **Cyc.**, p. 1568, n. 98, p. 1711, n. 19.

From Multnomah: ROBERT TUCKER, Judge.

In Banc.

AFFIRMED.

For appellant there was a brief over the names of *Messrs. Joseph, Haney & Littlefield* and *Messrs. Hall & Lepper.*

For respondent there was a brief over the name of *Mr. Ralph A. Coan.*

BEAN, J.—This is an action for damages for breach of contract. In the complaint plaintiff claims damages, after deducting an item of interest of $283.50, in the sum of $7,260.77. The cause was tried

by the court and a jury. A verdict was rendered in favor of the plaintiff and against the defendant for the sum of $1,000. A judgment was entered thereon from which defendant appeals.

The circumstances of the case are about as follows: On August 8, 1922, plaintiff Herbert Gordon was in possession of a frame dwelling-house, situated on the southwest corner of 11th and Main Streets, in the City of Portland, Oregon. He had entered into an agreement with Mrs. E. Jean Campbell to build thereon a hotel and lease the premises to her for a period of ten years, and have the same completed by February 1, 1923. In order to do this it was imperative that the dwelling-house, which was of considerable value, be removed from the premises at once. On that date the plaintiff met Mr. Leo Blessner, manager of the defendant corporation, on the premises with the view of entering into a contract with defendant for having the dwelling-house moved to a lot on Mill Street, between 17th and 18th Streets, in the City of Portland. The defendant inspected the dwelling-house and went over the route with the plaintiff, over which it was proposed to move it, the plaintiff informing the defendant that he was leasing the dwelling-house on the new location, and selling furniture to the party who was to lease the house, on the new location, and that he was going to buy the lot for the purpose of having the house moved thereon.

The defendant, after carefully making the examination and being informed by the plaintiff that time was the essence in moving the dwelling-house, as he was under a contract to build a hotel on the premises, decided that he would move the house for the sum of $1,125, the plaintiff, however, to take care of the street railway trolleys and wires. The defendant further

agreed that it would start to move the dwelling-house in about ten days or two weeks.

The plaintiff asserts that he then and there accepted the offer of defendant. On August 11, 1922, the defendant, in response to the plaintiff's request, confirmed the oral agreement by a written letter, which reads as follows:

"Curtis Bros.,
"A. D. Moodie Housemoving Company,
"595 Gideon Street.
"August 11, 1922.

"Mr. Herbert Gordon,
"235 East 55th Street.

"Dear Sir: I hereby submit a bid for the moving of the house on the southwest corner of 11th and Main Streets to a location on Mill Street, between 17th and 18th, and hold same on our timbers until you put in foundation. We agree to do the above work in a good and workmanlike manner for the sum of Eleven Hundred and Twenty-five Dollars ($1125.00). This does not include taking care of any street railway trolleys or wires.

"Yours truly,
"CURTIS BROS.,
"By LEO C. BLESSNER."

The plaintiff immediately accepted the written offer. In reliance upon the contract with the defendant, he entered into a contract to purchase the real property on Mill Street between 17th and 18th Streets, and paid a deposit on the same in the sum of $100, and also entered into an agreement to lease the dwelling-house on the new location to one Sophia Harper, and also to sell her the furniture in the dwelling-house for the sum of $1,500. On the eighteenth day of August, 1922, the plaintiff asked defendant to proceed with the moving of the house, but the defendant said he was unable to do so at that time. About

August 28, 1922, the plaintiff again called upon the defendant, relative to the moving of the dwelling-house, but the defendant seemed reluctant to remove the house and finally brought up the question of permit, contending that he was unable to secure one from the city. Plaintiff asserts that as the question of the permit had not been contained in the terms of the contract and, since it was the custom for the house-mover to get his permit, the plaintiff expected the defendant to get the permit. The plaintiff then made application to the city for one, which application was granted. In addition the plaintiff had the estimates made for taking care of the street railway trolleys and wires. The plaintiff thereupon informed the defendant that he had made arrangements for taking care of the electric and telephone wires and trolleys and had also secured the application, and the defendant could then secure the permit. The defendant then refused to go ahead with his contract and informed the plaintiff that he would not move the house. Thereafter the plaintiff attempted to get another house-mover to move the dwelling but was unable to do so as they did not have the equipment therefor available. Thereafter, about September 17, 1922, the plaintiff was compelled to and did employ the Rose City Wrecking Company to tear down and wreck the house. The wrecking company paid plaintiff $75 for the material and the plaintiff paid $75 for removing the refuse, after the house had been wrecked.

The defendant, by his pleadings and testimony, claims that the offer he made to plaintiff was never formally accepted by the plaintiff; that when the plaintiff called up defendant, about August 25, 1925, and said "Your two weeks are about up now; when

are you going to get started moving the house?"
the defendant, by its manager, Mr. Leo C. Blessner,
informed him that he was waiting to hear from plain-
tiff; that he had not accepted the offer; that if plain-
tiff wished defendant to move the house that it
could not begin for about ten days; that if plaintiff
desired defendant to move the house for him to go
ahead and secure the permit and put up the deposit
to take care of the wires and trolleys, in accordance
with defendant's written offer; that the plaintiff
never did secure the permit to move the house as
he agreed, but, on the contrary, without notice to
defendant, proceeded to wreck and tear down the
dwelling-house, thereby making it impossible for de-
fendant to move it, and defendant denies plaintiff's
damages.

The first and most important assignment of error
is that the court erred in overruling defendant's mo-
tion for a directed verdict in favor of defendant, on
the ground that the plaintiff failed to prove his con-
tract as alleged in his complaint.

1–3. The first question to be determined is, What
was the contract? It was partly in writing and
partly oral. Such a contract, as stated in 13 C. J.,
Section 13, is regarded as an oral or verbal contract.
In the note to that statement, there is cited a wealth
of authorities. The rule of evidence that all pre-
liminary negotiations and agreements are to be
deemed merged in the final settled instrument exe-
cuted by the parties does not prevent a contract from
being partly oral and partly in writing. The ques-
tion whether an entire contract was reduced to writ-
ing, or an independent collateral agreement was
made, is one of fact for the jury, if there is any

evidence to sustain such oral agreement: 6 R. C. L. 640, § 55.

4. The plaintiff testified, in effect, that the defendant, by its manager, made an examination of the premises where the house was located and the route over which it was to be moved, and the lot to which it was to be moved, in company with the plaintiff, and that they made an oral agreement at that time that the defendant would move the house for the sum of $1,125. The plaintiff requested the defendant to confirm the agreement in writing or by letter. The defendant afterwards wrote the letter above quoted.

The plaintiff also testified that he signified his acceptance of the offer made by the defendant in writing. In such condition as this where there is a series of acts, each one independent, the contract in its nature, is tentative until the final assent is given. That assent, when it is given, vivifies the entire transaction. See Wigmore on Evidence, vol. V, §§ 2401, 2404, and 2425.

5–9. In making a contract, although it is necessary that the minds of the parties should meet, it is not necessary that the assent of both parties should be given at the same instant. The assent must be given for the purpose of forming a contractual relation, or, as is sometimes said, the expression of intention must be promissory and contractual in its nature. It must be their express intention: 6 R. C. L. 599, § 22. An assent to an offer which is requisite to the formation of an agreement is an act of the mind; and is either expressed or evidenced by circumstances from which such assent may be inferred. Such determination must be manifested by the conduct by the acceptor. Anything that amounts to a mani-

festation of a formed determination to accept the offer communicated to the party making such offer would doubtless complete the contract: 6 R. C. L. 605, § 28.

10. As to the time in which the work was to be done, the plaintiff testified that on the eighth day of August, 1922, when they made the agreement he pressed the defendant's manager, Mr. Blessner, to move the house as soon as possible, and that he said that "he thought he could get at it in about ten days," and at one time, "two weeks"; that about ten days afterward he called Mr. Blessner up and he said "he wasn't ready yet." The plaintiff stated that afterward he had several conversations with Mr. Blessner and could not get any definite information; finally, he said he was unable to get a permit from the city officials to move the house. The plaintiff then made the application for a permit and had it approved. An estimate of the cost of taking care of the wires of the Portland Railway, Light & Power Company and the Telephone Company, and other companies, was made. The plaintiff testified as follows:

"Q. Mr. Gordon, going back to this agreement that you made with the defendant at the time that you agreed upon a price, was anything said at that time about who should get the permit?

"A. It wasn't understood I was to get the permit.

"Q. Well, was there anything said at that time by Mr. Blessner about when, if ever, you should pay him for the moving of the trolley wires?

"A. He said he would let me know the amount necessary to pay that when he got his permit.

"Q. I see.

"A. And I was to pay him at that time.

The testimony of the plaintiff indicates that the defendant acted upon the acceptance of plaintiff and endeavored to get a permit for moving the building. And further, that the permit was arranged for by plaintiff and that it was agreed between plaintiff and defendant as to the payment for taking care of the trolley wires, and that the matter of the permit did not stand in the way of moving the building.

It might be further noticed that the defendant would not be likely to be looking after the permit, or discussing whether he could get it, or not, or arranging the details for the payment for taking care of the wires, which plaintiff was to pay, unless a contract for moving the house had been made.

In regard to this motion the defendant contends that:

"One party to a contract cannot enforce a forfeiture of the terms as against the other unless he himself has performed all the conditions required of him thereby." Citing *Ingram* v. *Golden Tunnel Mining Co.*, 25 Wash. 318 (65 Pac. 549).

The testimony upon the part of plaintiff tended to show that he had performed all the terms of the contract on his part. It was unnecessary for him to actually pay the expense of cutting the trolley wires, if the house was not moved at all. According to his statement that matter was all agreed and understood between himself and defendant. Of course, a sufficient answer to this testimony of the plaintiff is that it is not true. That, however, all are agreed, was a question for the jury. If they believed the testimony of the plaintiff they were warranted in finding that the contract was made between the plaintiff and defendant, as alleged in the complaint.

11. Defendant further contends that where no time is fixed for the performance of a contract, a reasonable time is intended and no default can be attached until after a demand and failure or refusal to perform. Citing *Gammon* v. *Bunnel,* 22 Utah, 421 (64 Pac. 958). This proposition is conceded. However, the testimony indicates that the defendant agreed to commence the removal of the building in "about 10 days" or two weeks after making the contract. The plaintiff avers that he informed the defendant of practically all the circumstances in regard to plans for the construction of a hotel upon the lot where the dwelling-house was situated, and that he had agreed to lease the dwelling-house after it was removed; had made a sale of the furniture and made known to defendant all the circumstances necessitating an early removal of the dwelling-house. That he waited until September 17, 1922, for the defendant to move the house and then, in order to construct the hotel, he was compelled to wreck it.

12. Considering the date of the contract as of August 11, 1922, ten days would expire on August 21, 1922. "About 10 days" should not be construed to mean twenty-six days after the expiration of the ten-day limit or September 17th, instead of about August 21, 1922, neither should two weeks be considered as such a length of time under the circumstances shown in this case. We think that a date for the performance of the contract was fixed by the agreement of the parties, although not absolutely definite. Plaintiff further swears that he importuned or demanded of the defendant on several occasions, between the time of making the contract and September 17, 1922, to proceed with the work

of moving the dwelling-house. There was a sufficient demand according to plaintiff's testimony.

13. One item of damages claimed by plaintiff, on account of a breach of the contract by defendant, was $110.77, which the plaintiff paid Sophia Harper in settlement of a lease of the old house intended to be moved upon the new location, which he had agreed to make and a sale of the furniture to the same party for the sum of $1,500, $10.77 of the item being for interest which plaintiff paid Sophia Harper on the money which he had paid or deposited on the deal.

The defendant requested the court to instruct the jury, "That interest cannot be allowed in an action in damages for breach of contract," and assigns error upon the failure of the court to give the instruction as requested. The interest mentioned was not on the unliquidated damages claimed in this action. It was an amount that plaintiff, as he states, was compelled to and did pay on account of the breach of the contract by defendant. In so far as the $10.77 being a legal claim of Sophia Harper for interest on the money, the cases of *Carnahan Mfg. Co.* v. *Beebe-Bowles Co.*, 80 Or. 124 (156 Pac. 584), and the prior decisions of this court cited by defendant, do not apply, as those opinions were rendered prior to the time of the amendment of the statute regulating interest, by Chapter 358, General Laws of Oregon of 1917, page 781.

14, 15. Any damages sustained by plaintiff that may reasonably be supposed to have been within the contemplation of the parties at the time the contract was executed, and which were the approximate and natural consequences of the breach by defendant, may be recovered in an action for damages for

breach of the contract. Such damages would include any reasonable sum actually and necessarily paid out by plaintiff on account of the breach of the contract, although it may be a loss "on collateral contracts": *Blagen* v. *Thompson,* 23 Or. 239, 248 (31 Pac. 647, 18 L. R. A. 315); *Levy* v. *Nevada, Cal & Or. R. R. Co.,* 81 Or. 673, 681 (160 Pac. 808, L. R. A. 1917B, 564); *Shelley* v. *Eccles,* 283 Fed. 361, 363; 17 C. J. 742, § 76, subd. 2; 8 R. C. L. 495, 496, § 56.

In *Suetter* v. *Cornwall,* 102 Or. 220, 237 (201 Pac. 1072), we read thus:

"In addition to general damages, the injured party is entitled to recover special damages which arise from circumstances peculiar to the particular case, where those circumstances were communicated to or known by the other party at the time the contract was made: *Blagen* v. *Thompson, supra.*"

16. There was no error in the refusal to give the requested instruction. The defendant requested the court to charge the jury by several requested instructions to the purport, that if they found from the evidence that the defendant was ready and willing and offered to perform the contract, and that the plaintiff refused to perform his part of the contract, and abandoned the project and caused the house to be wrecked, plaintiff could not recover. Also, that if they found that the plaintiff did not accept the bid of defendant and abandoned moving the house by tearing it down, they should find for the defendant.

The learned trial judge in the charge to the jury stated with much detail and precision the contentions and claim of plaintiff and the defendant as set forth in their pleadings, and elaborated upon the trial of

the case. As an example the court charged the jury among other things as follows:

"If you find from the evidence that there was no contract between these parties, that their minds did not meet, as is alleged by the defendant, later, and that after having met the plaintiff abandoned it, not notifying the defendant, as is alleged by his wrecking the building and on his part failed to carry out the provisions of his contract, then the plaintiff of course cannot recover. * * Likewise, if you find from the evidence that although the contract was not entered into in accordance with the complaint, as alleged, but that it was entered into in accordance with the theory of the defendant, and you further find that the contract was entered into and existed and the minds met, but that the defendant was prevented from performing it, you then would find for the defendant."

17. From an examination of the entire charge we think that all of the issues were plainly submitted to the jury for its determination, although not in the same language as requested by counsel for defendant. We find no error in the refusal of the court to instruct the jury in the exact language requested by defendant. The refusal of the court to give requested instructions, even though they are proper, is not reversible error, where the charge given to the jury, taken as a whole, substantially covers the same matter: *Hooning* v. *Henry,* 106 Or. 605, 611 (213 Pac. 139); *Caldwell* v. *Hoskins,* 94 Or. 567, 570 (186 Pac. 50); *Childers* v. *Brown,* 81 Or. 1, 9 (158 Pac. 166, Ann. Cas. 1918D, 170).

18. It is elementary law in this state that a motion for a directed verdict cannot be granted, and the question at issue withdrawn from the jury where there is any substantial evidence upon all of the

issues which the jury is entitled to consider as against the moving party upon the issues made by the pleadings: *Robison* v. *Oregon-Washington R. & N. Co.*, 90 Or. 490, 496 (176 Pac. 594); *Doherty* v. *Hazelwood Co.*, 90 Or. 475, 478 (175 Pac. 849, 177 Pac. 432); *Collins* v. *United Brokers Co.*, 90 Or. 356–360 (194 Pac. 458); *Derrick* v. *Portland Eye, Ear, Nose & Throat Hosp.*, 105 Or. 90, 94 (209 Pac. 344).

We find no error in the records. The judgment of the trial court is therefore affirmed.    AFFIRMED.