Argued and submitted May 23, 2002, affirmed February 12, 2003

## MOORE EXCAVATING, INC.,
an Oregon corporation,
*Appellant,*

*v.*

## CONSOLIDATED SUPPLY CO.,
an Oregon corporation,
*Respondent.*

9906-05896; A112636

63 P3d 592

Thomas W. Brown argued the cause for appellant. With him on the briefs were Christine Coers-Mitchell and Cosgrave, Vergeer & Kester LLP.

Thomas W. Sondag argued the cause for respondent. With him on the brief was Lane Powell Spears Lubersky LLP.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges.

LINDER, J.

**LINDER, J.**

Plaintiff Moore Excavating, Inc., brought this action seeking common-law indemnity and damages for negligence from defendant Consolidated Supply Co. The trial court granted defendant's motion for summary judgment on both claims and entered judgment for defendant. Plaintiff's appeal requires us to resolve two unrelated issues. The first is whether the discharge element of the claim for common-law indemnity can be satisfied based on plaintiff's settlement of a claim with a third party on which defendant is also liable when the settlement did not legally extinguish defendant's liability on the claim. The second issue is whether the terms of the contract between plaintiff and defendant create the kind of special relationship that can be a basis for a duty on defendant's part to further plaintiff's economic interests. For the following reasons, we agree with the trial court's resolution of both issues and affirm.

On review of a grant of summary judgment, we view the facts and all reasonable inferences that may be drawn from them in the light most favorable to the nonmoving party—in this case, plaintiff. ORCP 47 C; *Robinson v. Lamb's Wilsonville Thriftway*, 332 Or 453, 455, 31 P3d 421 (2001). Because it had the burden of proving all the elements of its claims at trial, plaintiff was required to produce evidence to establish a material issue of fact to avoid summary judgment. ORCP 47 C.

Plaintiff entered into an agreement with Aspen Meadows, LLC, (Aspen) to install a domestic water system in a manufactured home development. Plaintiff purchased the pipe and glue for that project from defendant. According to what plaintiff characterizes as "the standard of practice of contractors and suppliers in the industry and the area," plaintiff relied on defendant to select the appropriate glue for the system "based upon the pipe specifications, the time of year for installation and other factors." Plaintiff also relied on defendant's expertise in carrying out that selection.

Plaintiff installed the water system, using the pipes and glue that it received from defendant. After the installation, Aspen discovered that the water system was leaking

and, based on that discovery, asserted claims against plaintiff. Plaintiff and Aspen entered into a settlement agreement pursuant to which plaintiff paid Aspen $37,000 and installed a new water system. Also pursuant to that settlement agreement, Aspen released all claims that it had against plaintiff. Plaintiff, for its part, reserved all of its claims against defendant. The settlement agreement did not release Aspen's claims against defendant.

Defendant moved for summary judgment on plaintiff's indemnity claim on the ground that plaintiff could not prove that it had discharged defendant's liability to Aspen. Plaintiff responded by producing its settlement agreement with Aspen as well as the affidavit of plaintiff's president, Roy Moore. That affidavit simply stated that Aspen asserted claims against plaintiff resulting from leaks in the water system and that Moore incurred costs and expenses in defending against and satisfying those claims.

In reply, defendant argued that, because plaintiff's settlement agreement with Aspen did not demonstrate that Aspen released its claims against defendant, plaintiff could not prove that it had discharged defendant's liability to Aspen. Shortly after defendant filed its reply, plaintiff submitted the affidavit of Jeffrey Payne, Aspen's managing member, which indicated through the following averments that Aspen had no intention of pursuing any claims against defendant:

"5. Neither Aspen nor I have ever pursued or contemplated pursuing any claim against Consolidated Supply Co. arising out of the leaks in the water lines at the Project, or any other issues related to the Project.

"6. Neither Aspen nor I have any intention of pursuing any claim against Consolidated Supply Co. now or at any time in the future related to the water line leaks at the Project.

"7. As a result of the performance by Moore pursuant to the Mutual Release and Settlement Agreement between Aspen and Moore, Aspen is satisfied that it has received adequate compensation for all damages resulting from the

leaks in the domestic water line system at the Project discussed above and the domestic water line system at the Project has been replaced."

In ruling on defendant's motion for summary judgment on the indemnity claim, the trial court concluded that, because the settlement agreement did not expressly release Aspen's claims against defendant, and notwithstanding the averments in the Payne affidavit, those claims survived. The trial court therefore determined that plaintiff produced no evidence to create a material issue of fact as to whether plaintiff had discharged defendant's liability to Aspen. Thus, as a matter of law, plaintiff was not entitled to indemnity.

Plaintiff's primary argument on appeal is that the trial court erred in concluding that it was required to obtain a release of Aspen's claims against defendant.[1] Specifically, plaintiff argues that the Supreme Court's decision in *Savelich Logging v. Preston Mill Co.*, 265 Or 456, 509 P2d 1179 (1973), does not require a release, that the trial court erred in relying on the law of contribution to support its reasoning, and that this court's decisions require only proof that an indemnity plaintiff incurred reasonable costs in defending or satisfying a claim. Plaintiff also argues that the evidence it submitted in opposition to defendant's motion is sufficient to create a triable issue of fact about whether it discharged defendant's liability. Defendant responds that, regardless of whether the trial court was correct about the necessity of a release, the central issue is whether plaintiff was able to "prove that it discharged a liability owed jointly by plaintiff and defendant to Aspen." According to defendant, plaintiff did not produce sufficient evidence to create a jury question on that element of its claim.

In an action for indemnity, a plaintiff must plead and prove that (1) it has discharged a legal obligation owed to a third party; (2) the defendant was also liable to the third party; and (3) as between the plaintiff and the defendant, the

---

[1] Although plaintiff's opening brief suggested it was entitled to indemnity because it had partially discharged defendant's liability to Aspen, in its reply brief plaintiff clarified that it did not intend to "invoke any indemnity concept premised on 'partial indemnity.'" Rather, plaintiff's argument on appeal is that "its work performed for Aspen—along with its monetary payment—'fully extinguished' defendant's liability to Aspen."

obligation ought to be discharged by the defendant. *Fulton Ins. v. White Motor Corp.*, 261 Or 206, 210, 493 P2d 138 (1972), *overruled in part on other grounds by Waddill v. Anchor Hocking, Inc.*, 330 Or 376, 8 P3d 200 (2000). As stated above, the issue here is whether plaintiff has discharged a legal obligation owed to a third party. To prove that element, plaintiff must show that it discharged the obligation owed to Aspen "so as to extinguish both its own and defendants' liability." *Savelich Logging*, 265 Or at 460. Thus, the question we must answer is not whether, as a factual matter, Aspen is content with plaintiff's performance under their settlement. Rather, consistently with *Savelich Logging*, the question is whether plaintiff has extinguished *defendant's liability* to Aspen. In other words, we must determine whether, in settling with Aspen, plaintiff took steps to preclude Aspen, as a matter of law, from seeking damages from defendant for the leaking pipe. Because this case was disposed of on defendant's motion for summary judgment, the precise question is whether plaintiff adduced sufficient evidence to create an issue of material fact as to whether it extinguished defendant's liability.

■     As earlier described, plaintiff offered three pieces of evidence in support of its position: the settlement agreement with Aspen, the Moore affidavit, and the Payne affidavit. The settlement agreement merely indicated that Aspen released its claims against plaintiff and that plaintiff reserved its claims against defendant. Nowhere did the settlement agreement indicate that Aspen released its claims against defendant. The Moore affidavit was similarly unavailing. Moore simply averred that Aspen asserted claims against plaintiff and that plaintiff incurred costs and expenses in defending against and satisfying those claims. Finally, the Payne affidavit simply stated that Aspen received adequate compensation for its damages and has no intention of pursuing any claims against defendant.

■■     But an indemnity plaintiff must do more than show that the third party is content with a settlement and does not wish to exercise its legal rights against the indemnity defendant. Here, to borrow from the Supreme Court's discussion of the discharge element in *Savelich Logging*, plaintiff's agreement with Aspen must "operate to protect * * * defendant

against a claim" by Aspen that defendant is also liable for the damages that Aspen sustained as a result of the leaking pipes. 265 Or at 466. In other words, before defendant will be on the hook for indemnity to plaintiff, plaintiff must show that it has "bought peace" for defendant in a way that is legally binding on the third party. The trial court concluded that such protection had to be in the form of a full and formal release. We believe that the form of the protection is less important than its substance. Whether the protection for the indemnity defendant is obtained through a formal release or is accomplished through some other mechanism, the important point is that, in a subsequent proceeding brought by the third party against the indemnity defendant, the indemnity defendant must be able to establish as a matter of law that its liability to the third party has been extinguished. *See Restatement (Third) of Torts* § 22 comment b (2000) (indemnitee may show discharge "either by a settlement with the plaintiff that by its terms or *by application of law* discharges the indemnitor * * * or by satisfaction of judgment that *by operation of law* discharges the indemnitor from liability" (emphasis added)).

Here, the Payne affidavit establishes that Aspen is, as a factual matter, content with the settlement agreement between it and plaintiff. That affidavit would not, however, support a determination that plaintiff, through the settlement agreement or otherwise, extinguished defendant's liability to Aspen. As a result, none of the evidence that plaintiff offered created an issue of material fact as to whether plaintiff discharged defendant's liability to Aspen. The trial court properly granted defendant's motion for summary judgment on plaintiff's indemnity claim.

In arguing to the contrary, plaintiff urges that this court's indemnity decisions require an indemnity plaintiff to show only that it incurred reasonable costs in settling or defending a claim and that those costs should properly be paid by the defendant. In support of that position, plaintiff cites *PGE v. Const. Consult. Assoc.*, 57 Or App 116, 643 P2d 1334 (1982), and *State Dept. of Trans. v. Scott*, 59 Or App 25, 650 P2d 158 (1982). We disagree, however, that those decisions support plaintiff's understanding.

Specifically, in *PGE*, the indemnity plaintiff had successfully defended a suit brought by a third party. In seeking indemnity, the plaintiff maintained that, consistently with its successful defense of the underlying action, it was not liable to the third party. Relying on that assertion, the defendant argued that the plaintiff had to prove that it and the defendant had a common liability to the third party. Because the plaintiff denied any liability, it could not prove that element of its indemnity claim. We concluded that, in a case where the indemnity plaintiff denied liability to the third party but nevertheless incurred costs in defending against that claim, it was enough to show that "it was sued, reasonably incurred costs in defending and that, as between it and the putative indemnitor, the indemnitor should bear the burden of the defense." *PGE*, 57 Or App at 120. In other words, "[i]n an indemnity action *seeking defense costs*, the plaintiff is not required to prove that it was actually liable to the third party." *Id*. (emphasis added).

In subsequent cases, we have reiterated that formulation.[2] We have not, however, stated that the *PGE* formulation was meant to supplant the elements identified in *Fulton*. Rather, as the discussion above suggests, the formulation set forth in *PGE* describes the necessary proof where the indemnity plaintiff denies liability to the third party. It does not dispense with the requirement that the indemnity plaintiff prove, as required by *Savelich Logging*, that it has discharged both its own and the defendant's liability to the third party. Thus, in *Scott* the indemnity defendant conceded that it was liable for the amounts the indemnity plaintiff sought. 59 Or App at 29. The question of whether the plaintiff had discharged its own and the defendant's liability to third parties was not at issue in that case. Because both parties agreed that the plaintiff was not liable to the third parties, we relied on the *PGE* formulation to determine whether the defendant should properly bear those costs. *Id*. To the extent that our cases after *PGE* suggest that the formulation set out there can be substituted for the *Fulton* elements, that suggestion is incorrect.

---

[2] *See Smith v. Urich*, 151 Or App 40, 947 P2d 1125 (1997); *M.L. Kauth, Inc. v. Lyon*, 116 Or App 216, 840 P2d 730 (1992), *rev den*, 315 Or 442 (1993); *Martin v. Cahill*, 90 Or App 332, 752 P2d 857 (1988).

■ In its second assignment of error, plaintiff argues that the trial court erred in granting defendant's motion for summary judgment on plaintiff's negligence claim. Plaintiff alleged in its complaint that defendant was negligent "[i]n selecting and providing [plaintiff] with an inappropriate Cement," and also in "failing to warn [plaintiff] that applying the Cement selected by [defendant] could lead to water leaks and a need to replace the Water System at the Project." Plaintiff also alleged that defendant "selected the particular type of Cement to be used for installing the Waterlines," and that plaintiff "was relying on [defendant's] judgment to select suitable Cement for the Project."

In response to defendant's motion for summary judgment, plaintiff offered the Moore affidavit in support of its argument that its "negligence claim is viable, based on the economic relationship between [plaintiff] and defendant." In his affidavit, Moore reiterated that the "glue provided for the Project was chosen by [defendant]" and that, according to "the standard practice in the industry, [plaintiff] provided [defendant] with the specifications for the type of pipe and lengths required for the Project." Defendant then

> "provided a price for the materials, including the glue that [defendant] chose. It is standard practice in the utility and site contracting industry in the Portland Metropolitan Area for contractors such as Moore to rely on pipe suppliers such as [defendant] to select and supply the appropriate type of glue for a domestic water line system to be installed based on the dimension of the materials selected, the time of year the system would be constructed, and other factors."

The trial court concluded that "the relationship between plaintiff and defendant, typical of contractors and suppliers, was arm's length, not special," and granted defendant's motion. On appeal, plaintiff argues that the parties were in a special relationship because plaintiff authorized defendant to exercise "independent judgment on plaintiff's behalf" and "in furtherance of [its] economic interests."

■■ Because the parties' relationship arises out of a contract, plaintiff may bring a claim for negligence only if defendant is subject to a standard of care independent of the terms of the parties' contract. *Georgetown Realty v. The Home Ins.*

*Co.*, 313 Or 97, 106, 831 P2d 7 (1992). Any duty in tort must arise not from the terms of the contract but from the nature of the parties' relationship. *Conway v. Pacific University*, 324 Or 231, 237-38, 924 P2d 818 (1996). Thus, we consider "whether the terms of the contract create the *type of relationship* that gives rise to such a tort duty." *Id.* at 241 (emphasis in original). The types of relationships that give rise to such duties are those in which

> "the party who owes the duty has a *special responsibility* toward the other party. This is so because the party who is owed the duty effectively has authorized the party who owes the duty to exercise independent judgment in the former party's behalf and in the former party's interests."

*Id.* at 240 (emphasis in original). In other words, the party who owes the duty is charged with acting " 'at least in part, * * * to further the economic interests of the * * * person owed the duty of care.' " *Id.* (quoting *Onita Pacific Corp. v. Trustees of Bronson*, 315 Or 149, 161, 843 P2d 890 (1992)).

We applied those principles in *Gladhart v. Oregon Vineyard Supply Co.*, 164 Or App 438, 994 P2d 134 (1999), *rev'd on other grounds*, 332 Or 226, 26 P3d 817 (2001). In *Gladhart*, the plaintiffs, a vineyard and its owners, purchased 3,200 grape plants from the defendants, a nursery. Those plants were guaranteed to be free of phylloxera, a microscopic aphid that lives on grapevine roots and that causes decreased grape production and, eventually, the death of the grapevines. *Id.* at 440. Notwithstanding that guarantee, the grape plants that the plaintiffs bought were infested with phylloxera. The plaintiffs asserted claims based on several theories, including negligence and negligent misrepresentation based on the plaintiffs' allegations that they entered into a relationship with the defendants and relied on the defendants' "expertise and advice concerning phylloxera." *Id.* at 445.

The trial court dismissed the plaintiffs' claims. On appeal, the plaintiffs argued that their negligence and negligent misrepresentation claims were viable because the defendants' "contractual obligation created an independent duty on which to base a tort claim." *Id.* at 447. We disagreed. Applying the principles set forth in *Georgetown* and *Conway*,

we concluded that the plaintiffs had not sufficiently alleged the requisite special relationship. Specifically, we concluded that "[a]lthough plaintiffs allege that they relied on defendants' representations because of their expertise, plaintiffs do not allege that they employed defendants to exercise independent judgment on their behalf or that they gave control to defendants to achieve a particular outcome." *Id.* at 449.

Here, plaintiff argues that "the parties' contractual relationship reflects that 'defendant exercised independent judgment on plaintiff's behalf,' " because defendant "selected and supplied the glue" after "plaintiff provided defendant with the specifications for the type of pipe." Such a relationship, however, is not different from the one we considered in *Gladhart*, where the defendants selected and supplied grape plants. As we explained there, any duty on the seller's part in that context arises out of the sales contract, not independently of it. Here, defendant contracted to sell plaintiff pipe and glue. In doing so, defendant did not assume an obligation to pursue plaintiff's economic interests. Moreover, the fact that plaintiff relied on defendant for information does not change the nature of their arm's-length contractual relationship.

In *Conway*, the Supreme Court was careful to "emphasize the distinction" between a plaintiff who relies on representations, as plaintiff did here, and one who is "placed in a position in which he had a *right* to rely" on representations. 324 Or at 242 n 5 (emphasis in original). As noted, the nature of the parties' relationship is determined with reference to their agreement and the agreement here is one for the sale of goods. As such, the parties did not form the requisite special relationship on which plaintiff can now base a claim for negligence. The trial court correctly granted defendant's motion for summary judgment on plaintiff's negligence claim.

Affirmed.