Argued and submitted July 9, affirmed October 15, 2003

## VTECH COMMUNICATIONS, INC.,
*Appellant,*

*v.*

## ROBERT HALF, INC.,
dba Accountemps, Inc.,
*Respondent.*

## C00-1827CV; A117619

77 P3d 1154

Shane Abma argued the cause for appellant. With him on the briefs were Timothy R. Volpert and Davis Wright Tremaine LLP.

David H. Wilson, Jr., argued the cause for respondent. With him on the brief were Emi A. Donis and Bullard Smith Jernstedt Wilson.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

BREWER, J.

Armstrong, J., dissenting.

**BREWER, J.**

Plaintiff VTech Communications, Inc., appeals from a summary judgment for defendant Robert Half, Inc., doing business as Accountemps, Inc., on plaintiff's claims for breach of contract and negligence. The claims arose from defendant's provision of a temporary payroll clerk who, after becoming plaintiff's permanent employee, embezzled substantial funds from plaintiff. Plaintiff asserts that the trial court erred in entering summary judgment against it on both claims and in failing to grant its motion to strike a portion of an affidavit filed in support of defendant's summary judgment motion. We affirm.

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. ORCP 47 C. We state the facts and all reasonable inferences that may be drawn from them in favor of the nonmoving party—in this case, plaintiff. *Robinson v. Lamb's Wilsonville Thriftway*, 332 Or 453, 455, 31 P3d 421 (2001). Defendant is a temporary employment agency that furnishes temporary accounting and other financial personnel to businesses. Defendant has several offices in Oregon. In July 1996, plaintiff's controller, John Birrell, contacted defendant's Beaverton office to request a payroll clerk as a possible "temporary-to-permanent" hire. Defendant provided Teena Rodriguez as a candidate. Rodriguez had filled out defendant's application form with references, and defendant had tested her job-related skills. Rodriguez represented in her employment application that she had never been convicted of a crime. In the course of verifying Rodriguez's qualifications, defendant did not discover that, one month before submitting her application to defendant, Rodriguez had pleaded guilty to aggravated theft based on her embezzlement of funds from a previous employer, Mission Packaging, Inc. (Mission). Birrell interviewed Rodriguez. Based on that interview and defendant's determination that Rodriguez was qualified, defendant hired Rodriguez as its employee and placed her with plaintiff as a temporary payroll clerk.

The only written terms documenting the contractual relationship between plaintiff and defendant with respect to

Rodriguez's employment were contained in a document entitled "Conditions of Assignment." That document also included a weekly time sheet, and defendant provided it to plaintiff at the end of Rodriguez's first week of employment. It provided, in part:

> "For the services of our employee, whose name appears on the front of this copy under 'accountemps employee,' we will invoice your firm as verbally agreed. * * *
>
> "* * * * *
>
> "Our employee is assigned to you under the following Conditions of Assignment.
>
> "* * * * *
>
> "(2) accountemps guarantees you satisfaction with our employee's services by extending to you a one-day (8 hours) guarantee period. If, for any reason, you are dissatisfied with the employee assigned to you, accountemps will not charge for the first 8 hours worked * * *. Unless you contact us before the end of the first eight hours, you agree that our employee assigned is satisfactory and further agree to these Conditions of Assignment.
>
> "* * * * *
>
> "(9) It is understood that under no circumstances will accountemps be responsible for claims for work performed unless such claims are reported in writing to accountemps within ninety (90) days after termination of the temporary assignment.
>
> "(10) Each invoice will evidence a separate and distinct contract."

In addition to the "Conditions of Assignment," plaintiff produced evidence, in the form of Birrell's deposition testimony, that defendant had orally agreed that it would "check references" for the applicants it recommended to plaintiff.

After Rodriguez had worked for 90 days, plaintiff hired her as a permanent employee. Plaintiff did not conduct an additional interview or check Rodriguez's references before making her a permanent employee. Over the next two years, Rodriguez embezzled $1.3 million from plaintiff. As yet unaware of the embezzlement, plaintiff terminated

Rodriguez in October 1998 for unrelated reasons. Shortly thereafter, Rodriguez's probation officer contacted plaintiff and informed it of Rodriguez's previous conviction for aggravated theft. Plaintiff then performed an internal audit and discovered the embezzlement.

In July 2000, plaintiff commenced this action against defendant, alleging claims for breach of contract and negligence. In the breach of contract claim, plaintiff alleged that "Accountemps agreed to check the references of any temporary employee provided to VTech" and that "Accountemps did not check Rodriguez'[s] references prior to her employment * * *." In its negligence claim, plaintiff alleged that defendant breached a duty of reasonable care by failing to check Rodriguez's references and in failing to warn plaintiff of her previous embezzlement from Mission. Defendant moved for summary judgment on both claims. The trial court granted the motion, and plaintiff appeals from the ensuing judgment for defendant.

 We first consider the breach of contract claim.[1] Plaintiff asserts that the summary judgment record discloses genuine issues of material fact as to whether the parties created an enforceable oral agreement to check references, whether defendant breached that agreement, and whether, because defendant failed to properly check Rodriguez's references and alert plaintiff to Rodriguez's previous embezzlement, plaintiff was damaged. Defendant responds that the alleged agreement to "check references" does not constitute an enforceable obligation. Defendant also argues that the alleged oral agreement is inconsistent with the terms of the written "Conditions of Assignment," which, defendant asserts, required plaintiff to notify defendant before the end of the first eight hours that Rodriguez worked if it was not satisfied with her performance.[2] Further, defendant asserts that, if an enforceable agreement was made, it did not breach that agreement because it followed its own internal policy in

---

[1] We reject without discussion plaintiff's preliminary argument that the trial court abused its discretion by permitting defendant to file its summary judgment motion fewer than 45 days before the trial date.

[2] Although defendant does not refer to the parol evidence rule, ORS 41.740, we understand its inconsistency argument to invoke that rule.

checking Rodriguez's references. Finally, defendant asserts that plaintiff failed to produce evidence of causation—specifically, that defendant would have learned of Rodriguez's previous embezzlement from any of the references listed on her application.

■ The trial court granted summary judgment at the first step of analysis. It reasoned:

"I don't think there is a contract. * * * I don't think there is any evidence of a contract that—all there is is a discussion of what Accountemps is going to do, and a term such as 'check references' could never be a contract. It has no meaning whatsoever."

We begin our analysis with that issue. Mutual assent, or what historically was considered as the "meeting of the minds" requirement, may be expressed in words or inferred from the actions of the parties. *Gordon v. Curtis Bros. et al.*, 119 Or 55, 62-63, 248 P 158 (1926). In its complaint, plaintiff alleged that "[defendant] agreed to check the references of any temporary employee provided to [plaintiff]." In its memorandum opposing the summary judgment motion, plaintiff was more specific. It asserted:

"Before placing Rodriguez at Vtech, Staffing Managers at Accountemps represented that they would place applicants only after obtaining a minimum of two oral references from managerial personnel at a[n] applicant's prior employers. They also provided Vtech with promotional materials promoting their services as uniquely suited to finding the right person because of their 'daily experience interviewing applicants, testing and evaluating skills, checking references and monitoring performance', since '[m]ost managers don't have the time or experience' to undertake that responsibility."

Plaintiff produced deposition testimony from two of defendant's representatives that defendant's internal policy provided that its staffing manager team members were to check two to three employer references from supervisors or coworkers on behalf of client businesses. However, plaintiff adduced no evidence that defendant's representatives ever told plaintiff that defendant would check any particular

number of employer references.[3] Moreover, plaintiff presented no evidence that, in making the alleged oral agreement, it relied on any promotional material provided to it by defendant. To the contrary, defendant produced deposition testimony from plaintiff's principal negotiator, Birrell, in which Birrell stated that he did not rely on that material at all in entering into the agreement with defendant.

The only evidence that plaintiff presented concerning the terms of the alleged oral agreement to check references was the following deposition testimony by Birrell:

> "My recollection is very general in that their statement in their sales pitches to me was that they would check * * * the applicant's references. I don't believe I recall them ever saying anything more specific than that. Just that they would check their references."

There is no other evidence in the record as to any communication between the parties concerning defendant's alleged undertaking to check references. However, plaintiff contends that, even though it did not, in making the alleged agreement, consider defendant's internal policy concerning reference checks, that policy constitutes evidence of industry custom and usage that suffices to give meaningful content to defendant's alleged promise. Defendant responds that there is no evidence in the record that its internal policy reflected an industry standard or that any particular industry standard existed. Instead, defendant asserts that, for all the record shows, its policy may have exceeded any applicable industry standards.

■ There are two difficulties with plaintiff's position. First, it did not argue before the trial court that defendant's internal policies constituted evidence of industry custom and usage. Therefore, that theory arguably is not preserved for appeal. Second, even if the theory was preserved, the record does not support it. The only role that custom and usage evidence could play in a breach of contract claim would be to

---

[3] More specifically, plaintiff presented no evidence to support its assertion that defendant would check "a minimum of two oral references."

establish the meaning that the parties intended for a particular contractual term. *See, e.g., Bernard v. First Nat'l. Bank*, 275 Or 145, 155, 550 P2d 1203 (1976) (holding that evidence of a customary meaning is admissible and that the contract will be construed according to that meaning if it is proved that the words were used and understood in that sense).[4] Thus, in order to be relevant, custom and usage evidence would have to show that the parties bargained with reference to that standard; in other words, that each had it in mind in using the relevant term. Here, however, there is no evidence that the parties bargained with reference to defendant's internal policy or that either party considered that policy to have contractual force. Therefore, the dispositive question is whether, unsupported by more specific evidence as to its meaning, the alleged undertaking to "check references" constituted an enforceable obligation. In that regard, plaintiff may not take refuge in the principle that the meaning of an agreement, if unclear, generally is for the trier of fact to decide. *Cf. Timberline Equip. v. St. Paul Fire and Mar. Ins.*, 281 Or 639, 643, 576 P2d 1244 (1978) (noting that, where "the language of the contract is ambiguous, or if technical words, local phrases or terms of art are used and evidence is properly admitted showing meaning, the question becomes one of fact"); *Hellbusch v. Rheinholdt*, 275 Or 307, 311-12, 550 P2d 1199 (1976) (discussing custom and usage in resolving ambiguity in oral contract; noting that, the existence of custom or usage generally is a question of fact). That general rule presupposes that the alleged undertaking itself is sufficiently definite as to its essential terms to constitute an enforceable obligation. *See Pritzker v. Carr*, 113 Or App 310, 313, 832 P2d 1250, *modified on recons*, 115 Or App 171, 836 P2d 1377 (1992) (holding that the question whether the express terms of an agreement were indefinite is an issue for the court, and the questions whether the parties gave a

---

[4] Plaintiff's breach of contract claim, unlike its negligence claim, does not involve an asserted duty of reasonable care the scope of which can be established through evidence of an *advisory* industry standard. *Cf. Hansen v. Abrasive Engineering and Manufacturing*, 317 Or 378, 384-85, 856 P2d 625 (1993) (holding that, although not promulgated by a government entity and not binding on the defendant, industry "advisory standards provide some evidence of the custom in defendant's industry and, therefore, are relevant to the jury's consideration of whether defendant met the standard of care").

definite meaning to an ambiguous term and, if so, what that meaning was, are questions of fact for the jury).

Defendant correctly observes that the summary judgment record does not show that the parties agreed on "any standard for determining how many references must be checked[,] [t]hey did not define what it means to 'check' * * * [and they] did not identify any standards for evaluating the information[.]" Those gaps do not involve mere subordinate details; rather, they go to the very core of defendant's alleged undertaking. *See Phillips v. Johnson*, 266 Or 544, 555, 514 P2d 1337 (1973) (holding that, before a valid contract can exist, there must be mutual assent as to all its essential terms). On the record before us, there was no evidence of mutual assent as to essential terms of the alleged oral agreement to check references. Accordingly, the trial court did not err in granting defendant's motion for summary judgment on plaintiff's breach of contract claim.

■ We turn to plaintiff's negligence claim. Defendant asserts that summary judgment was appropriate with respect to that claim because no special relationship existed between the parties that would support the imposition of liability upon it independently from its contractual undertaking to plaintiff. We recently have summarized the relevant governing principles:

> "Because the parties' relationship arises out of a contract, plaintiff may bring a claim for negligence only if defendant is subject to a standard of care independent of the terms of the parties' contract. *Georgetown Realty v. The Home Ins. Co.*, 313 Or 97, 106, 831 P2d 7 (1992). Any duty in tort must arise not from the terms of the contract but from the nature of the parties' relationship. *Conway v. Pacific University*, 324 Or 231, 237-38, 924 P2d 818 (1996). Thus, we consider 'whether the terms of the contract create the *type of relationship* that gives rise to such a tort duty.' *Id.* at 241 (emphasis in original). The types of relationships that give rise to such duties are those in which
>
> > " 'the party who owes the duty has a *special responsibility* toward the other party. This is so because the party who is owed the duty effectively has authorized the

party who owes the duty to exercise independent judgment in the former party's behalf and in the former party's interests.'

"*Id.* at 240 (emphasis in original). In other words, the party who owes the duty is charged with acting ' "at least in part, * * * to further the economic interests of the * * * person owed the duty of care." ' *Id.* (quoting *Onita Pacific Corp. v. Trustees of Bronson,* 315 Or 149, 161, 843 P2d 890 (1992))."

*Moore Excavating, Inc. v. Consolidated Supply Co.,* 186 Or App 324, 332-33, 63 P3d 592 (2003).

Here, there is no evidence that defendant furnished Rodriguez's services to plaintiff in order to further plaintiff's economic interests. Rather, the record shows that the parties entered into an arm's-length transaction in which defendant sought to profit from plaintiff's employment of Rodriguez. "[T]he fact that plaintiff relied on defendant for information does not change the nature of their arm's-length contractual relationship." *Id.* at 334. Because defendant did not owe plaintiff a duty of reasonable care that was independent from the terms of the parties' contract, the trial court properly granted summary judgment in defendant's favor with respect to the negligence claim.

That conclusion brings us to plaintiff's second assignment of error, in which it asserts that the trial court erred in "failing to grant (or even address)" its motion to strike portions of an affidavit that defendant submitted in support of its motion for summary judgment. In that motion, plaintiff challenged a portion of an affidavit submitted by one of defendant's employees on the ground that the affiant lacked personal knowledge of the facts asserted, namely, that defendant made two positive placements of Rodriguez with other customers in 1994. Defendant responds that the motion, which was included as a subsection within plaintiff's memorandum in opposition to the motion for summary judgment, was not properly before the trial court and that, even if it was, it was not well taken.

The trial court did not rule on plaintiff's motion to strike, and plaintiff did not draw that omission to the court's attention at any time. Accordingly, there is no ruling for us to review. *See* ORAP 5.45(3) ("Each assignment of error shall

identify precisely the * * * *ruling* that is being challenged."
(Emphasis added.)); ORAP 5.45(4)(a)(i) ("Each assignment of
error * * * must specify * * * *the way in which [the question or
issue] was resolved or passed on by the lower court.*" (Emphasis added.)). Thus, plaintiff's argument reduces to whether
the trial court erred in failing to decide the motion.

■　　Assuming without deciding that the court erred, we
conclude that the error was harmless. The challenged evidence was relevant only to the issues whether defendant
breached the alleged contract to check references or breached
an independent duty of reasonable care in failing to adequately check references. Those issues presuppose that there
was an enforceable contract to check references and that
defendant owed plaintiff an independent duty of reasonable
care. We have rejected both premises. Thus, even if the challenged evidence had been struck, defendant would have been
entitled to summary judgment on both claims.

Affirmed.

**ARMSTRONG, J.,** dissenting.

I respectfully dissent.