**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SERGIO FAJARDO SOTELO; PRISCA
RAMIREZ ALEMAN; YADIRA BETZAVE
FAJARDO ALEMAN,
                        *Petitioners,*

            v.

ALBERTO R. GONZALES, Attorney
General,
                        *Respondent.*

No. 03-74083

Agency Nos.
A72-538-378
A72-538-379
A72-538-380

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
September 16, 2005—Pasadena, California

Filed October 21, 2005

Before: Jerome Farris, David R. Thompson, and
Jay S. Bybee, Circuit Judges.

Opinion by Judge Farris

14449

## COUNSEL

Murray D. Hilts, San Diego, California, for the petitioners-appellants.

S. Nicole Nardone and Leslie McKay, United States Department of Justice, Civil Division, Office of Immigration Litigation, Washington, D.C., for the respondent-appellee.

## OPINION

FARRIS, Circuit Judge:

Petitioners challenge the Board of Immigration Appeals' denial of their motion to reopen deportation proceedings. The motion was made in an attempt to avail themselves of the class action settlement approved in *Barahona-Gomez v. Ashcroft*, 243 F. Supp. 2d 1029 (N.D. Cal. 2002). That settlement permitted eligible immigrants to apply for suspension of deportation under the law as it existed prior to the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009, *as amended by* Pub. L. No. 104-302, 110 Stat. 3656 (1996) (IIRIRA). The record indicates that petitioners are not *Barahona-Gomez* class members and therefore are not entitled to this relief. The BIA did not err in denying their motion to reopen.

## I

Petitioners Sergio Fajardo Sotelo, his wife Prisca Ramirez Aleman, and their daughter Yadira Betzave Fajardo Aleman,

all natives and citizens of Mexico, entered the United States without inspection in August 1989. Less than six years later, on March 10, 1995, they were served with an Order to Show Cause and charged with entering the country without inspection. Deportation proceedings were commenced against them. Petitioners conceded deportability and subsequently applied for asylum and withholding of removal.

Following a November 1995 hearing, an Immigration Judge denied petitioners' application. A timely appeal was filed with the BIA on December 8, 1995. On February 11, 1998 the BIA affirmed the IJ's decision and dismissed the appeal. Review of the BIA's dismissal was not sought; rather petitioners filed, on March 6, 1998, a motion to reopen their deportation proceedings, seeking suspension of deportation based on their accrual of seven years of continuous physical presence in the United States during the pendency of their appeal.

On August 5, 1999 the BIA denied petitioners' motion to reopen based on section 309(c)(5) of the IIRIRA, which amended the suspension of deportation provisions such that any period of continuous physical presence in the United States is terminated when an alien is served with notice and placed in removal proceedings. This is commonly known as the "stop time" rule.[1] *Compare* 8 U.S.C. § 1254(a) (1996)

---

[1] "Before IIRIRA, an alien was eligible for suspension of deportation if (1) he or she 'ha[d] been physically present in the United States for a continuous period of not less than seven years immediately preceding the date of [the] application' for suspension of deportation; (2) he or she was a 'person of good moral character'; and (3) deportation would result in 'extreme hardship' to the alien or to an immediate family member who was a U.S. citizen or a lawful permanent resident." *Guadalupe-Cruz v. INS*, 240 F.3d 1209, 1210 n.2 (9th Cir. 2001) (quoting Immigration and Nationality Act § 244(a)(1), 8 U.S.C. § 1254(a)(1) (1994)). Furthermore, "[b]efore IIRIRA, aliens accrued time toward the continuous physical presence in the United States requirement until they applied for suspension of deportation. Commencement of deportation proceedings had no effect on this accrual." *Id.* at n.3 (internal quotation marks omitted).

(repealed 1996) *with* 8 U.S.C. §§ 1229b(b)(1), 1229b(d)(1). The IIRIRA amendments took effect on April 1, 1997, while petitioners' asylum appeal was pending before the BIA. Since Fajardo Sotelo and his family were placed in deportation proceedings when fewer than six years had passed since their entry from Mexico, the BIA concluded that they were not eligible for suspension of deportation under the amended law. The petitioners did not seek review.

In June 2003 petitioners again moved to reopen their deportation proceedings claiming they were entitled to apply for "renewed suspension" of deportation under pre-IIRIRA rules as eligible class beneficiaries of the class action settlement approved in *Barahona-Gomez*, 243 F. Supp. 2d 1029. On October 10, 2003 the BIA concluded that petitioners were not eligible for relief under the *Barahona-Gomez* settlement and denied their second motion to reopen. Petitioners seek review of this decision.

## II

We have jurisdiction over this appeal under the IIRIRA's transitional rules. *See* IIRIRA § 309(c)(1); *Arrozal v. INS*, 159 F.3d 429, 431-32 (9th Cir. 1998) ("*Sarmadi* supports a finding that the [IIRIRA] transitional rules do not deny this court jurisdiction over motions to reopen." (citing *Sarmadi v. INS*, 121 F.3d 1319, 1320, 1322 (9th Cir. 1997))). We review the BIA's denial of a motion to reopen for an abuse of discretion, "although de novo review applies to the BIA's determination of purely legal questions." *Mejia v. Ashcroft*, 298 F.3d 873, 876 (9th Cir. 2002). Our review of the interpretation of settlement agreements is also de novo and is governed by principles of state contract law. *See Botefur v. City of Eagle Point, Or.*, 7 F.3d 152, 156-57 (9th Cir. 1993). Whether petitioners are entitled to relief under the *Barahona-Gomez* settlement is a question of law and our review is de novo.

### III

**[1]** The *Barahona-Gomez* settlement was reached to resolve a dispute over two directives issued by the BIA Chairman and Chief Immigration Judge in anticipation of the IIRIRA amendments. These directives instructed Immigration Judges and the BIA not to issue decisions or consider appeals resulting in suspension of deportation between February 13 and April 1, 1997, the effective date of IIRIRA. *See Barahona-Gomez v. Reno*, 167 F.3d 1228, 1232 (9th Cir. 1999), *supplemented by* 236 F.3d 1115, 1117 (9th Cir. 2001). As a result, some immigrants who would have had their suspension of deportation claims heard under pre-IIRIRA law during this period were rendered ineligible by the stop time rule when their cases were heard after April 1, 1997. As a class these immigrants challenged the delay caused by the two directives and the parties eventually agreed to settle the claim by permitting eligible class members to reapply for suspension of deportation under the law as it existed before the stop time amendment. *See Barahona-Gomez*, 243 F. Supp. 2d at 1033.

**[2]** Despite petitioners' arguments, they are not persons entitled to relief under the terms of the *Barahona-Gomez* settlement. The settlement contains two provisions that define persons entitled to relief — a "Definition of the Class" and a "Definition of 'Eligible class members.' " While the parties expend most of their efforts arguing whether Fajardo Sotelo and his family are "Eligible class members" entitled to relief, this emphasis overlooks a necessary preliminary determination of class membership. Under the plain meaning of the settlement no person can be a "class member[ ] . . . eligible for the relief provided . . . by this agreement" if they do not first fall within the "Definition of the Class." *Barahona-Gomez*, 243 F. Supp. 2d at 1030-31; *see* Cal. Civ. Code § 1638 ("The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity."); *Botefur*, 7 F.3d at 156 ("The interpretation of a settle-

ment agreement is governed by principles of state contract law. This is so even where a federal cause of action is settled or released." (internal citations and quotations omitted)). Only if petitioners are class members can we then decide whether they are class members eligible for relief.

**[3]** In Section I(B) the *Barahona-Gomez* settlement defines the class as follows:

> all persons who *have had (or would have had) sus-pension of deportation hearings conducted before April 1, 1997*, within the jurisdiction of the Ninth Circuit Court of Appeals, and who were served an Order to Show Cause within seven years after enter-ing the United States, where:
>
> (a) the immigration judge reserved or withheld granting suspension of deportation on the basis of the . . . directive from Defendant Chief Immigration Judge . . . ; or
>
> (b) the suspension of deportation hearing was con-cluded prior to April 1, 1997, the INS has appealed or will appeal, at any time, on a basis that includes the applicability of [the IIRIRA], and the case was affected by the . . . directive[s] . . . ; or
>
> (c) the Board of Immigration Appeals . . . has or had jurisdiction but withheld granting suspension of deportation (or reopening or remanding a case for consideration of an application for suspension of deportation) *before April 1, 1997 on the basis of the . . . directive from Defendant Board Chairman . . . .*

*Barahona-Gomez*, 243 F. Supp. 2d at 1030-31 (emphasis added). This definition makes plain that to be a member of the *Barahona-Gomez* class an immigrant must show that 1) he or she had a suspension of deportation hearing *before* April 1,

1997 (or would have had a hearing but for the directives at issue), and 2) where a case was before the BIA, that *before* April 1, 1997 the BIA withheld granting suspension of deportation (or a motion to reopen or remand for the purpose of hearing an application for suspension of deportation) *because of* a challenged directive.

**[4]** Petitioners fail to meet either "Definition of the Class" element and are not members of this class. They did not have a suspension of deportation hearing before April 1, 1997, nor would they have had a hearing if the challenged directives had not been issued. Petitioners did not seek suspension of deportation until their March 6, 1998 motion to reopen deportation proceedings. They also failed to meet Section I(B)(c) of the settlement. The BIA did not "withhold" reopening petitioners deportation proceedings before April 1, 1997 — the BIA denied the motion to reopen on August 5, 1999. Nor did the BIA "withhold" any consideration of the motion to reopen or petitioners' eligibility for suspension of deportation *on the basis of* either directive. The BIA denied petitioners' motions to reopen on the ground that they failed to accrue seven years of continuous presence in the United States under the IIRIRA's stop time rule, which had taken effect before the motion was made.[2] Thus, the BIA made a decision on the merits of petitioners' motion, not a decision to "withhold" relief based on any directive challenged in *Barahona-Gomez*. Since petitioners are not members of the *Barahona-Gomez* class, they are not entitled to any relief contained in the settlement agreement.

---

[2] We also reject petitioners argument that the BIA erred in applying the IIRIRA's stop time rule under *Guadalupe-Cruz v. INS*, 240 F.3d 1209 (9th Cir. 2001). In *Guadalupe-Cruz* an Immigration Judge applied the stop time rule *before* the IIRIRA took effect on April 1, 1997. Here, petitioners first moved to reopen deportation proceedings in March 1998 and the BIA denied the motion in August 1999, well after the stop time rule became law. There was no error.

This interpretation is consistent with the purpose of the *Barahona-Gomez* settlement. The plaintiffs in that case suffered harm as a result of the delay caused by the directives of the Chief Immigration Judge and BIA Chairman. *See Barahona-Gomez*, 167 F.3d at 1233. The remedy won in the settlement is simply the opportunity to have their applications for suspension of deportation heard under the law which would have governed but for the delay. *See Barahona-Gomez*, 243 F. Supp. 2d at 1033. It would be incongruous to afford the same remedy to immigrants who were not harmed because they did not have a suspension of deportation claim pending while the directives were in effect. A contrary result would create an exception to the application of IIRIRA's stop time rule neither contemplated by Congress nor sanctioned by any court approved settlement.

[5] Since petitioners are not entitled to relief based on class membership they cannot be "Eligible class members" under the settlement agreement.

AFFIRMED