PREGERSON, Circuit Judge,
dissenting.
I dissent. Petitioners in this case, Manuel Angeles Castro and Margarita Lopez Flores, were the victims of a “notario” service that contracted with unscrupulous attorneys and cheated Petitioners out of the opportunity to present their case fully. According to Petitioners, they met a person who falsely promised them that they were eligible for permanent residency and who filed a fraudulent asylum application with the INS on their behalf. This person did not tell them what was being done for them or why. After the INS denied Petitioners’ affirmative asylum applications, their cases were referred to immigration court, where Petitioners withdrew their asylum applications and applied for suspension of deportation. The person who filed the first round of applications with the INS took Petitioners to the “International Law Center” for help. Petitioners were told that the International Law Center was an office of attorneys, and Petitioners signed a contract for representation with the International Law Center.
The applications for suspension of deportation filed on Petitioners’ behalf were woefully inadequate. The evidence supporting the applications did not meet the minimum evidentiary standards for the claims raised. Petitioners went to the In *868 temational Law Center shortly before their merits hearing, and asked if they could provide additional evidence. They were told that “their attorney” was not there, and that it was too late to supplement their applications.
A different attorney showed up at each of Petitioners’ five hearings in immigration court. Petitioners had had no contact with any of these attorneys before the day of the hearing. One abandoned them in the hallway outside the courtroom, leaving Petitioners to fend for themselves in that day’s proceeding. On the date of the merits hearing, Petitioners’ “counsel” walked into the courtroom having met her clients for the first time only five minutes earlier. She had not prepared her clients for the hearing at all, nor had anyone explained to Petitioners what would be expected of them. Petitioners brought five witnesses prepared to testify on the crucial issue of when Petitioners first entered the United States, but counsel only called upon one of them to testify. She told the IJ that the testimony of the other witnesses would be duplicative. It appears from the record that counsel had at least one other matter set for the same morning, which might explain her urgency to finish the hearing. The questions she put to her witnesses were largely generic, and, because she lacked familiarity with Petitioners’ case, she could do little to advance her clients’ cause with her presentation.
I credit Petitioners’ allegations completely, because they tell the story of hundreds of immigrants that pass through our courts. We are familiar with this scheme of non-attorneys—notarios—who make big promises, charge exorbitant fees, file incomplete pleadings, and contract with untrustworthy attorneys who make unprepared appearances in the immigration courts. The California State Bar has disciplined attorneys for participating in such a scheme. See Matter of Valinoti (California State Bar Proceedings 2002), available at http://www.calbar.ca.gov/calbar/pdfs/sbc/Opinions/Valinoti. pdf.[1] The BIA’s conclusion that the International Law Center’s representation “was adequate” and that counsel “conducted herself properly” is thus risible, and “mocks the meaning of what a lawyer is—a counselor and advocate knowledgeable of the matters on which he or she provides counsel and of the cause he or she represents.” Escobar-Grijalva v. INS, 206 F.3d 1331, 1335 (9th Cir.2000).
Counsel in an immigration case is “the one hope [the alien] has to thread a labyrinth almost as impenetrable as the Internal Revenue Code.” Id. at 1335 (citations omitted). Our entire system of justice for immigrants is complicit in a process that takes advantage of a vulnerable population and results in fundamentally unfair proceedings. The names of certain “appearance attorneys” are familiar even to us, *869 and certainly must be familiar to the IJs in whose courts they appear every day.[2] Until we refuse to accept the product of such unfair proceedings as meeting the minimum standards of “due process,” this perverse system will not change and will continue to prey on vulnerable population.
We are country that believes in fairness. We are a country that believes in the rule of law. We believe that those who are called into our courts deserve the aid of a counselor who will advocate for the client vigorously and with professionalism. And yet the system we have in place makes a mockery of these thing we claim to hold dear. Not only does it deprive a vulnerable group of people of competent representation, it does so in a context in which people believe they are receiving competent representation. We tolerate the inevitable result of proceedings like this: that families are broken up, and that United States citizen children are discarded from this country because their parents could not afford better representation. Removing a person from the United States—a person who has set down roots, who has become part of our community, who has children and family here—should be a grave act attended with the utmost caution. To remove a person whose only guides have been notarios and appearance attorneys is to secure a cheap victory at the cost of fairness. Our current rule does nothing to curb this abuse: the notario and attorneys involved in the Petitioners’ case will be long gone—with Petitioner’s money—by the time this disposition comes out and the Angeles Castros suffer the hardship of their counsel’s incompetence. Something must be done to motivate IJs and government attorneys to ensure that immigrants are not represented by attorneys who have known their clients for five minutes. Because prejudice is inherent in this notario system, I would grant the petition solely on the basis of egregious violations of Petitioners’ constitutional right to due process.
Even following the general rule that prejudice exists only where the movant has shown a “plausible” case for relief, see Rojas-Garcia v. Ashcroft, 339 F.3d 814, 827 (9th Cir.2003), I believe that the evidence in this case presents a plausible case for suspension of deportation and therefore that prejudice in fact exists. The IJ found that Petitioners had not been in the United States for the requisite seven years based on lack of documentary evidence of their presence here, and based on incongruities and lack of detail in the declarations of their friends and family. The declarations originally presented to the IJ are bare-boned and contain minor inconsistencies. Given that these declaration were the only evidence demonstrating that Petitioners have been in the United States for the requisite period, competent counsel would have included corroborating details in the declarations. See Vera-Villegas v. INS, 330 F.3d 1222, 1225 (9th Cir.2003). Nonetheless, the declarations strongly suggest that Petitioners have been in the United States longer than the period for which they can provide written documentation. In the declaration submitted with Petitioners’ motion to reopen, the affiant connects Petitioners’ arrival in the United States to a significant event in his life, which adds to his credibility. Given this evidence, I believe that if Petitioners’ case been presented competently, the BIA may *870 have found that Petitioners met the requisite seven years continuous presence.
Similarly, I believe that Petitioners and their United States citizen son would suffer extreme hardship if Petitioners were deported. Petitioners asserted that they would leave their United States citizen son in the United States with his uncle if they were removed. The IJ rejected their assertions as insincere because Petitioners failed to show how the child would be cared for in the United States, as required in Matter of Ige, 20 I. & N. Dec. 880, 1994 WL 520996 (BIA 1994). See Perez v. INS, 96 F.3d 390, 393 (9th Cir.1996) (concluding that the Matter of Ige declaration is a valid evidentiary prerequisite where parents claim, as hardship, that they will leave their child in the United States). Nonetheless, Petitioners have at least considered leaving their son behind if they are removed. New evidence submitted to the BIA also showed that Petitioner’s United States citizen child has asthma and receives treatment in the United States. We still do not have complete evidence on the severity of the condition, but this may affect the calculus of whether the child should be taken to Mexico or left behind. I would not dismiss this case before full evidence has been presented about the parents’ intentions or about the child’s medical conditions. Therefore, I would remand to allow Petitioners, with the aid of competent counsel, to argue that extreme hardship exists where the Petitioners would either have to leave their child in the United States, in the care of a single man who does not appear ready to care for the child, or take the child to Mexico, where his medical condition may or may not be properly treated.
It is cruel to separate parents from their child. It is even crueler to do so without a full and fair hearing and without the assistance of competent counsel. I dissent.

. The scheme here is indistinguishable from the one that resulted in suspension of attorney James Valinoti's license. Valinoti served as an "appearance attorney” for cases referred to him by non-attorney "immigration consultants.” These immigration consultants, or notarios, would ñle a fraudulent asylum application on their client’s behalf, id. at *10-12, and then, once the application was denied, would file an application for suspension of deportation, id. at *14-15. At that point, they would contract with attorneys like Valinoti to make court appearances. Id. at *13. Valinoti often met his clients in the hallways of immigration court and consulted with his clients minimally before he stepped into court to represent them. Id. at *13, 16-17. The State Bar found that Valinoti had aided and abetted the unauthorized practice of law by these immigration consultants. Id. at *20-21. Notably, two of Petitioners’ five "attorneys” in this case were associated with Valinoti. See Escobar-Grijalva v. INS, 206 F.3d 1331, 1333 (9th Cir.2000) (Jeremy Frost); Baltazar-Alcazar v. INS, 386 F.3d 940, 942 (9th Cir. 2004) (Stephen Alexander).

. We have already considered ineffective assistance of counsel claims against two of the attorneys that appeared on Petitioner’s behalf. Escobar-Grijalva v. INS, 206 F.3d 1331, 1333 (9th Cir.2000) (ineffective assistance claim regarding the conduct of Jeremy Frost); Rodriguez Lariz v. INS, 282 F.3d 1218 (9th Cir. 2002) (ineffective assistance claim regarding the conduct of Stephen Alexander).