**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

HUGO LEONEL CHALY-GARCIA,
       *Plaintiff-Appellant,*

v.

UNITED STATES OF AMERICA;
MICHAEL B. MUKASEY, Attorney
General of the United States; and
MICHAEL CHERTOFF, Secretary of
the Department of Homeland
Security of the United States,*
       *Defendants-Appellees.*

No. 05-35715

D.C. No.
CV-04-00582-BR

OPINION

Appeal from the United States District Court
for the District of Oregon
Anna J. Brown, District Judge, Presiding

Argued and Submitted
September 28, 2007—Portland, Oregon

Filed November 29, 2007

Before: Mary M. Schroeder, Chief Judge, and
Barry G. Silverman and Susan P. Graber, Circuit Judges.

Opinion by Judge Graber

---

*Michael B. Mukasey is substituted for his predecessor, Alberto R. Gonzales, as Attorney General of the United States, and Michael Chertoff is substituted for his predecessor, Tom Ridge, as Secretary of the Department of Homeland Security, pursuant to Federal Rule of Appellate Procedure 43(c)(2).

15395

**COUNSEL**

Stephen W. Manning, Immigrant Law Group LLP, Portland, Oregon, for the plaintiff-appellant.

Kelly A. Zusman, Assistant United States Attorney, Portland, Oregon, for the defendants-appellees.

**OPINION**

GRABER, Circuit Judge:

Plaintiff Hugo Leonel Chaly-Garcia sued Defendants United States, the Attorney General of the United States, and the Secretary of Homeland Security of the United States, seeking relief as a class member under the class action settlement agreement in *American Baptist Churches v. Thornburgh*, 760 F. Supp. 796 (N.D. Cal. 1991) ("ABC" or "ABC Agreement"). The district court granted summary judgment to Defendants, ruling that Plaintiff was not an ABC class member. On de novo review, *Sotelo v. Gonzales*, 430 F.3d 968, 970 (9th Cir. 2005), we reverse and hold that Plaintiff is a member of the ABC class and is entitled to the benefits of the ABC Agreement.

On December 14, 1990, Defendants agreed to settle a class-action filed by numerous churches, organizations, and individuals on behalf of more than 300,000 asylum applicants from El Salvador and Guatemala. The complaint in that case alleged that Defendants had systematically violated the Refugee Act of 1980, Pub. L. No. 96-212, 94 Stat. 102, in their

processing of Salvadoran and Guatemalan asylum applications. The settlement of those claims received widespread publicity. *E.g.*, Katherine Bishop, *U.S. Adopts New Policy for Hearings on Political Asylum for Some Aliens*, N.Y. Times, Dec. 20, 1990, at B18. On January 31, 1991, the district court approved the settlement and published the ABC Agreement as part of its order. *Am. Baptist Churches*, 760 F. Supp. 796.

The ABC Agreement "impose[d] binding obligations on the parties and their successors" and "constitute[d] a full and complete resolution of the issues raised" in the class-action lawsuit. *Id.* at 799. The Agreement applied to two classes: "all Salvadorans in the United States as of September 19, 1990," and "all Guatemalans in the United States as of October 1, 1990." *Id.*

Under the Agreement, class members who had not been convicted of an aggravated felony were eligible for "a de novo, unappealable asylum adjudication before an Asylum Officer, including a new interview, under the regulations in effect on October 1, 1990." *Id.* To exercise their rights under the Agreement, Salvadoran and Guatemalan class members had different options. Salvadoran class members had to either (1) "apply for Temporary Protected Status under Section 303 of the Immigration Act of 1990," or (2) "indicate to the INS their intent in writing to apply for a de novo asylum adjudication before an Asylum Officer, or otherwise to receive the benefits of this agreement, within" a specified period of time. *Id.* at 799-800. Guatemalan class members had to "indicate to the INS in writing their intent to apply for a de novo asylum adjudication before an Asylum Officer, or otherwise to receive the benefits of this agreement, within the period of time commencing July 1, 1991 and ending on December 31, 1991." *Id.* at 800. The Agreement included a registration card as an example, which class members could use to satisfy the written-intent requirement. *Id.* at 814. All class members "entitled to the benefits" of the Agreement also were eligible for employment authorization benefits if they "identif[ied] them-

selves as class members and . . . s[ought] work authorization under th[e] agreement." *Id.* at 804-05.

On January 31, 1991, the same day on which the ABC Agreement was approved by the court, Plaintiff went to an Immigration and Naturalization Service office in Portland, Oregon. A native and citizen of Guatemala, Plaintiff had been in the United States since approximately July of 1987. He orally informed an immigration officer that he intended to take advantage of the "new asylum program for the Guatemalans," and he submitted a completed asylum application in writing.

Defendants did not schedule, interview, process, or adjudicate Plaintiff's asylum application for more than 12 years. During those 12 years, Plaintiff requested employment authorization six times, identifying himself as an ABC class member on four of his applications. Defendants approved each of his six requests, and government case status reports generated at the conclusion of each authorization period listed his status as "Special Group: ABC." Concurrently, Defendants repeatedly suspended asylum interviews for ABC class members for most of the 12-year period, citing concerns over the proper handling of ABC applications.

On July 14, 2003, Defendants finally interviewed Plaintiff in connection with his 1991 asylum application. Defendants determined that Plaintiff was ineligible for the benefits of the ABC Agreement because they found no credible evidence that he had registered for ABC benefits. Plaintiff filed suit in federal district court, seeking relief under the Agreement. The district court granted summary judgment to Defendants. The court agreed with the parties that the ABC Agreement required a class member to provide written notice of an intent to receive the benefits of the agreement and ruled that "Plaintiff's asylum application, which did not include any written statement indicating his desire to opt-in to the ABC settle-

ment, does not satisfy the notice-of-intent requirement of the ABC Settlement Agreement." Plaintiff timely appealed.

**[1]** "An agreement to settle a legal dispute is a contract and its enforceability is governed by familiar principles of contract law." *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1990). Contracts with the United States are governed by federal law. *United States v. Seckinger*, 397 U.S. 203, 209 & n.12 (1970).

> A written contract must be read as a whole and every part interpreted with reference to the whole, with preference given to reasonable interpretations. Contract terms are to be given their ordinary meaning, and when the terms of a contract are clear, the intent of the parties must be ascertained from the contract itself.

*Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999), *amended*, 203 F.3d 1175 (9th Cir. 2000).

**[2]** Here, the plain text of the Agreement made class membership automatic and mandatory for "*all* Guatemalans in the United States as of October 1, 1990." *Am. Baptist Churches*, 760 F. Supp. at 799 (emphasis added). Defendants do not dispute that Plaintiff satisfies those membership criteria. The question therefore is not whether Plaintiff is a member of the ABC class—he is—but whether he exercised his rights under the ABC Agreement so as to entitle him to the benefits of the Agreement.

**[3]** To exercise his rights as a Guatemalan class member, Plaintiff had to "indicate to the INS in writing [his] intent to apply for a de novo asylum adjudication before an Asylum Officer, or otherwise to receive the benefits of th[e] agreement, within the period of time commencing July 1, 1991 and ending on December 31, 1991." *Id.* at 800. By its terms, the

Agreement required a Guatemalan class member to submit to the INS, within a set time frame, a writing "indicat[ing]" one of two things: (1) an intent to apply for a de novo asylum adjudication, or (2) an intent to receive the benefits of the ABC Agreement. Plaintiff submitted one writing to the INS— his asylum application. Although Plaintiff submitted the application before the window opened on July 1, 1991, Defendants concede that Plaintiff's premature writing was timely. Thus, determinative for Plaintiff is whether his asylum application satisfied one of the two written-intent requirements under the Agreement.

Plaintiff argues that his asylum application indicated an intent to apply for a de novo asylum adjudication. We disagree. The common definition of "de novo" is "[a]new." Black's Law Dictionary 467 (8th ed. 2004). A request for a de novo asylum adjudication is a request for an adjudication "conducted as if [an] original hearing had not taken place." *See id.* at 738 (defining "hearing de novo"). When Plaintiff applied for asylum in 1991, he had received no prior asylum adjudication. Not surprisingly, then, nowhere in his application does he request an adjudication to be conducted as if an original one had not taken place. Instead, he sought an *initial* asylum adjudication.

**[4]** Perhaps recognizing that not all class members would have received prior adjudications, the ABC Agreement provided an alternative means by which class members could exercise their rights—a writing indicating an intent "otherwise to receive the benefits of this agreement." *Am. Baptist Churches*, 760 F. Supp. at 800. The Agreement states that "the system of asylum processing ha[d] been significantly changed by regulations effective October 1, 1990." *Id.* at 799. One of the primary benefits of the ABC Agreement was that it granted class members an unappealable asylum adjudication before an asylum officer under the regulations in effect on October 1, 1990. *Id.* Plaintiff submitted his asylum application on January 31, 1991, after the October 1, 1990, regula-

tions had taken effect. Consequently, the application requested an asylum adjudication before an asylum officer under those regulations. Plaintiff's written asylum application, which demonstrated his membership in the ABC class, thus requested the benefits of the ABC Agreement and was a writing that indicated an intent to receive them.

**[5]** Defendants argue that Plaintiff did not satisfy the ABC Agreement requirements because he neither asked for a de novo asylum adjudication nor explicitly referenced the ABC Agreement in his asylum application. Defendants' arguments are misplaced. Under federal common law, we "presum[e] that every provision was intended to accomplish some purpose, and that none are deemed superfluous." *Harris v. Epoch Group, L.C.*, 357 F.3d 822, 825 (8th Cir. 2004) (internal quotation marks omitted). Were we to interpret the ABC Agreement to require a request for a de novo asylum adjudication, we would read the entire "benefits" clause out of the Agreement. Similarly, the text of the ABC Agreement requires that a class member request *the benefits of* the Agreement; nowhere does it state that an individual must refer to the Agreement itself. Mandating an invocation of the ABC Agreement would delete "the benefits of" from the "benefits" clause.

**[6]** Defendants also argue that Plaintiff failed to submit the registration card that was included in the ABC Agreement. However, Defendants concede that the text of the ABC Agreement allows class members to use *any* piece of writing to indicate their intent. Plaintiff could have used the registration card, but the broad terms of the Agreement did not require him to do so.[1]

---

[1]Class members from El Salvador could "apply for Temporary Protected Status under Section 303 of the Immigration Act of 1990" or, like Guatemalans, could "indicate to the INS their intent in writing" to gain the benefits of the ABC Agreement. *Am. Baptist Churches*, 760 F. Supp. at 799. The contrast between applying for a formal status and indicating an intention in writing suggests that the latter is meant to be broad, open-ended, and not limited to a particular form of writing.

REVERSED and REMANDED with instructions to enter summary judgment in favor of Plaintiff.